UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-23044-Civ-MARRA/JOHNSON

JOHN BRUHL, KEITH ROTMAN and
SCOTT MALTZ, individually and on
behalf of all others similarly situated

      Plaintiffs

vs.

KIERAN CONROY, DECLAN QUILLIGAN,
ANTHONY J. STOCKS AND JOHN M.S.
VERHOOREN, et al.

      Defendants.

_____/

**ORDER AND OPINION ON
DEFENDANTS KIERAN CONROY, DECLAN QUILLIGAN,
ANTHONY J. STOCKS AND JOHN M.S. VERHOOREN'S
MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendants Kieran Conroy, Declan

Quilligan, Anthony J. Stocks and John M.S. Verhooren's Motion to Dismiss Plaintiffs'

Consolidated Second Amended Securities Class Action Complaint [DE 317].  This

motion is fully briefed and ripe for review.  The Court has carefully considered the

motion, response, reply and is otherwise fully advised in the premises.

Previously, Defendants Kieran Conroy, Declan Quilligan, Anthony J. Stocks and

John M.S. Verhooren (the "Director Defendants") filed a Motion to Dismiss addressed

to Plaintiffs' Consolidated Amended Securities Class Action Complaint.  On March 31,

2006, the Court granted in part and denied in part that motion.  *See* DE 291.

Specifically, the Court ruled that with respect to the Director Defendants' primary

liability:

> None of the allegations against the Director Defendants meet the requirement for stating a claim for fraud under the bright line test established in *Ziemba*.  The most egregious acts alleged against the Director Defendants are that they were responsible for publishing and furnishing the NAV [net asset value] of the Fund's [Lancer Offshore, Inc.] shares, that they knew, or were reckless in not knowing, of material facts indicating that the financial statements of the Funds were not fairly presented to Plaintiffs, and that they disregarded blatant fraudulent practices.  While alleging that Citco Group [Citco Group Limited] and CFS [Citco Fund Services (Curacao) N.V.] "published" and "furnished" reports with fraudulent information may satisfy the bright line test as to corporate entities since publication of a report is the act of a corporate entity, such an allegation is too vague and conclusory with respect to the individual directors of the Funds who also allegedly "published or "furnished" the reports.  These allegations fall short of alleging that the Director Defendants actually made a false or misleading statement.  Am. Compl. ¶ 41.  Additionally, Plaintiffs do not allege that these "published" and "furnished" reports were attributable to the Director Defendants at the time of their dissemination.  Even assuming that the Plaintiffs have satisfied the particularity requirements of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 by use of the "group pleading doctrine," Plaintiffs have not attributed any statements or omissions to the Director Defendants.  Accordingly, Plaintiffs' Section 10(b) claim asserted against the Director Defendants is dismissed [without prejudice].

DE 291 at 10 (footnote omitted).  With respect to particularization of the alleged

misstatements, the Court decided not to dismiss the complaint for making use of the

group pleading doctrine as it relates to the Director Defendants :

as long as, in addition to alleging that the Director
Defendants made a material misstatement attributable to
them at the time of public dissemination, Plaintiffs make
[in the SAC] specific factual allegations that the each of
the individual Director Defendants, due to their high
ranking positions and direct involvement in the everyday
business of the company, were directly involved in
controlling the content of the statements at issue.  *Holmes
v. Baker*, 166 F. Supp. 2d 1362, 1373 (S.D. Fla. 2001); *In re
Sunbeam Securities Litigation*, 89 F. Supp. 2d 1326, 1340
-1341 (S.D. Fla. 1999).

DE 291 at 15.  With regard to the scienter allegations, the Court found

that the Plaintiffs failed to plead scienter as to Messrs.
Conroy, Quilligan, Stocks and Verhooren because the facts
giving rise to scienter have not been stated with
particularity as to each of them.  Further, Plaintiffs'
allegations that the Director Defendants either knew or
recklessly disregarded the falsity of the representations
made by Lauer (Am. Compl. ¶ 315) are conclusory
allegations lacking any supporting facts.  Plaintiffs have
failed adequately to allege scienter on the part of Messrs.
Conroy, Quilligan, Stocks and Verhooren because they
essentially rely solely on their positions as directors of the
Offshore Fund and their status as employees of CFS.
Plaintiffs do not even attempt to offer any factual basis for
concluding what specific knowledge Messrs. Conroy,
Quilligan, Stocks or Verhooren had at any given time that
was contrary to the reported valuations.  As such, their
pleading is deficient.

DE 291 at 16-17.

On April 28, 2006, Plaintiffs filed their Consolidated Second Amended

Complaint ("SAC") [DE 300].  In the SAC, Plaintiffs seek to hold the Director

Defendants liable for their actions or inactions as Directors on Lancer Offshore, Inc.'s

Board and as control persons of Citco Fund Services (Curacao) N.V.  The Director

Defendants have filed their second motion to dismiss asserting that the SAC suffers from the same infirmities as before and must be dismissed.  Plaintiffs respond that the shortfalls identified by the Court have been remedied in the SAC.[1]

As to the time periods and the positions held, the SAC alleges that:

Kieran Conroy ("Conroy") was a Director of the Offshore Fund from 1998 until early 2002.  Conroy was also a Managing Director of CFS during this time period.  SAC ¶ 34.

Declan Quilligan ("Quilligan") was a Director of the Offshore Fund from 2001 until early 2002.  Quilligan was also General Manager and Managing Director of CFS. SAC ¶ 35.

Anthony J. Stocks ("Stocks") was a Director of the Offshore Fund from 1995 until on or around July 2001.  Stocks was also a Director of the International Fund Services division of the Citco Group during this time period.  SAC ¶ 36.

_____

[1]    Plaintiffs argue that the Director Defendants are collaterally estopped from making many of the arguments they assert in their motion because Judge Scheindlin in New York recently ruled in a case involving the same claims, the same core facts, and the same defendants as the instant case, that the NAV statements were publicly attributable to the Director Defendants, and that the group pleading doctrine applied to satisfy Rule 9(b)'s requirement of particularly.  DE 333 at 8 referring to *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F. Supp. 2d 163, 191 (S.D.N.Y. 2006).  This argument is rejected.  Although collateral estoppel does not require the entry of a final judgment as does the application of res judicata, it does require sufficient indicia of finality.  *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1253 (11th Cir. 2006).  This Court does not believe a ruling on a motion to dismiss carries sufficient indicia of finality for collateral estoppel to be applied.

John M.S. Verhooren ("Verhooren") was a Director of the Offshore Fund from 1995 until at least January 1998.  During that time, Verhooren served as Operations Manager at the International Funds Services division of the Citco Group.  SAC ¶ 37.

**Does the SAC Adequately Allege a Section 10(b) Claim?**

Under the "bright line" test, which this Court has already determined it is bound to apply,[2] in order for the conduct of a secondary actor, such as the Director Defendants, to rise to the level of a primary violation, the secondary actor must not only make a material misstatement or omission, but "the misrepresentation must be attributed to the specific actor at the time of public dissemination," *i.e.*, in advance of the investment decision, so as not to undermine the element of reliance required for Section 10(b) liability.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999); *see also Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997).  The Eleventh Circuit has made clear that in order for a secondary actor to be primarily liable under the federal securities laws, a defendant must actually make a false or misleading statement which is publicly attributable to the maker at the time of the plaintiffs' investment decision.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1205 (11th Cir. 2001).

---

[2] *See* DE 291 at 10.

**Group Pleading Doctrine**

Under the group pleading doctrine, the identification of the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents, such as Annual Reports, prospectuses, net asset value statements, press releases, or other 'group published information' that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the company. *In re Sunbeam Securities Litigation*, 89 F. Supp. 2d 1326, 1340 -1341 (S.D. Fla. 1999).

Because the Eleventh Circuit has explicitly declined to rule on the viability of the group pleading doctrine,[3] and because other courts from the Southern District Court of Florida have permitted it, this Court decided not to dismiss the complaint for failing to attribute false or misleading statements to each Director Defendant *as long as,* in addition to alleging in the SAC that the Director Defendants made a material misstatement attributable to them at the time of public dissemination, Plaintiffs make specific factual allegations that the each of the individual Director Defendants, due to their high ranking positions and direct involvement in the everyday business of the company, were directly involved in controlling the content of the statements at issue.

---

[3] *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018-19 (11th Cir. 2004).

Here, Plaintiffs have satisfied this standard by alleging that the Director Defendants were intimately involved insiders, directly involved in the day-to-day activities of the Funds, CFS, its management and the statements provided to investors.  SAC ¶¶ 34-40, 88-103, 128-135, 228-235, Exs B-F, H-K.  For instance, Plaintiffs now allege that "[t]he Offshore Fund's Articles of Association further required the Director Defendants to manage Offshore's entire business and affairs.  Specific items identified therein included not only determining Offshore's NAV but also issuing shares, maintaining a share registry, keeping proper accounts in accordance with GAAP, generating balance sheets for the Offshore Fund's general meetings, and hiring auditors, attorneys, and other service providers."  SAC ¶ 96.  Director  Quilligan, in the absence of Directors Stocks and Conroy, executed the Agreement between CFS and the Offshore Fund on the Offshore Fund's behalf.  SAC ¶ 99.  These allegations and agreement were not previously a part of the Complaint.

The Administrative Services Agreement between Lancer Offshore and CFS, attached to the SAC as Exhibit B, clearly gives CFS responsibility for performing extensive financial, accounting and administrative duties.  SAC, Ex. B, ¶ 1.1.  These duties are to be performed under the supervision of the Company's Board of Directors.  *Id.*  These allegations, supported by the Administrative Services Agreement attached to the SAC, supply the allegations regarding direct involvement in controlling the content of the information either disseminated or withheld which the Court previously found lacking.  Previously, Plaintiffs grouped the "Citco Defendants"

and the "Citco Directors" together in one conclusory allegation regarding administration of the Fund.  *See e.g.,* DE 131 at ¶¶ 40-41.  The allegations relating to the Administrative Service Agreement clarifies that CFS delegated to the Board, upon which the Director Defendants sat, performance of essential financial, accounting, corporate, administrative and other services.  Given that Plaintiffs have alleged that each Director Defendant, due to his high ranking position as a member of the Fund's Board of Directors, was directly involved in controlling the content of the NAV statements, Defendants are not entitled to a dismissal on this basis.

**Bright Line Test's Public Attribution Requirement**

In its previous Order, the Court determined that Plaintiffs had failed to allege that the NAV statements were attributable to the Director Defendants at the time of their dissemination.[4]  Other than the collateral estoppel argument which has already been rejected, Plaintiffs assert that the SAC makes explicit that the misstatements in the NAVs were publicly attributable to the Director Defendants.  Plaintiffs contend that they have alleged that the Funds' investors were very much aware of the role of the Board of Directors at the time of their investment decisions by the information

---

[4]  "Under the 'bright line' test, in order for the conduct of a secondary actor to rise to the level of a primary violation, the secondary actor must not only make a material misstatement or omission, but "the misrepresentation must be attributed to the specific actor at the time of public dissemination," *i.e.*, in advance of the investment decision, so as not to undermine the element of reliance required for Section 10(b) liability.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999)."  DE 291 at 8.

provided in the Funds' Private Placement Memoranda ("PPM"), as well as in Offshore's audited financial statements for 2001.  The Court has reviewed the PPMs and finds that these documents informed investors that the Board of Directors would review the values assigned to the securities held by the Fund and, if the valuations did not fairly present those values, they would value the securities reasonably and set forth the valuations in writing.  SAC ¶¶ 100-103, 132-34, Ex. E at 24-25, Ex. F at 23-24.

The Plaintiffs also allege that the Funds' investors were advised of the Director Defendants' roles by the public statements of Quilligan and Verhooren which told of the Director Defendants' obligations, including the obligation to maintain independence, verify the fund's NAV, and fulfill the administrator's "risk monitoring" responsibilities.  SAC ¶¶ 104-117, 127-29.  The Court finds these well-pled allegations adequately attribute to the Director Defendants the misleading NAVs at the time of public dissemination and that the bright line test is satisfied.[5]

**Scienter**

In its previous Order, this Court found Plaintiffs' scienter allegations conclusory and lacking in supporting facts.  Whether an inference of scienter arises from the

---

[5]  Previously Plaintiffs simply alleged that Verhooren had written for "an industry publication in May 2003," regarding a hedge fund administrator's role.  DE 131 at ¶ 42.  Now Plaintiffs quote from articles by Verhooren and Quilligan wherein potential investors are encouraged to rely on CFS as a hedge fund administrator for providing core accounting, independent calculation of Net Asset Value, and more.

pleaded facts is a specific inquiry to be determined on a case-by-case basis after a review of the totality of the factual allegations in the complaint. *See, e.g., In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1339 (S.D. Fla. 1999) ("In the context of the entirety of the facts alleged in the complaint," an inference of scienter could be drawn); *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1327 (S.D. Fla. 2004) ("[T]he issue of scienter itself is very fact specific, requiring consideration of each individual factor as well as the context as a whole"). Thus, factors such as a reckless or improper audit, the magnitude of the fraud, and "red flags,"[6] should be examined individually, with the context as a whole also playing a role in this Court's consideration. *Id.*; *In re MicroStrategy, Inc., Sec. Litig.*, 115 F. Supp. 2d 620, 649 (E.D. Va. 2000). Scienter may even be demonstrated by strong circumstantial evidence or allegations. *See, e.g., In re PSS World Med., Inc. Sec. Litig*, 250 F. Supp. 2d 1335, 1344 (M.D. Fla. 2002) ("Plaintiffs can meet their burden under the [heightened pleading requirements of the Private Securities Litigation Reform Act] if they plead facts constituting 'strong circumstantial evidence of conscious misconduct or severe recklessness'"); *Sunbeam*, 89 F. Supp. 2d at 1338 (circumstantial evidence strongly suggested that defendants acted with scienter).

---

[6] "Red flags" are "those facts which come to the attention of a [defendant] which would place a reasonable [defendant] on notice that the . . . company was engaged in wrongdoing to the detriment of its investors." *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004)(citation omitted).

Plaintiffs claim that the SAC's allegations collectively, at a minimum, raise a strong inference of the Director Defendants' scienter.  Plaintiffs assert that the SAC sets forth with particularity that the Director Defendants recklessly ignored numerous red flags and provides direct evidence of the Director Defendants' conscious misbehavior.

**Severe Recklessness**

The new facts alleged in the SAC show that throughout the class period, the Director Defendants authored memoranda and e-mails discussing that the NAVs were highly suspect and were probably being manipulated, in part because restricted securities were being valued without a sufficient discount.  For example, it is alleged that as far back as 1996, CFS's Meijer wrote to CFS's Quilligan, Stocks and Verhooren specifically raising his concern that "Citco values the restricted securities immediately as common shares, which results in most of the cases directly in a high unrealized gain on the deal" which, he deemed, was "improper."  SAC ¶ 229, Ex. H.

These allegations, taken as true at this stage of the proceeding, are sufficient to show that Quilligan, Stocks and Verhooren knew that the valuations of the Funds' restricted shares were erroneous and highly suspect from at least 1996 forward.  Moreover, new allegations support the conclusion that Quilligan, Verhooren and Conroy knew of Lauer's small month-end trades that had no business purpose, except

to inflate the NAV value and CFS's fees.  SAC ¶¶ 234-35, Ex. J, K.[7]  Yet, as already

recognized by this Court, the Director Defendants authorized dissemination of these

NAV Statements to investors.

    In addition, Plaintiffs argue that the Director Defendants were aware of various

red flags which support an inference of scienter.  The Director Defendants assert that

these red flags are insufficient as a matter of law to put them on notice that Lauer

was committing market manipulation and fraud.  The Director Defendants adopt CFS's

argument that the fact that the Funds employed a unique and risky investment

strategy to succeed in a down market was the very basis upon which the Funds were

marketed to investors.  The red flags alleged by Plaintiffs were, according to Director

Defendants, consistent with Lauer's investment strategy, which was fully disclosed to

investors in the Placement Memoranda.

    Previously, the Complaint merely alleged that "the Director Defendants

intentionally failed to exercise independent judgment and appropriate care and

attention with respect to the determination of the Funds' NAV, in not knowing that

the Funds' holdings were overvalued and their NAV grossly inflated, and/or

_____

    [7]  While none of the individual defendants was serving as a Director at the time
that the e-mails were circulated, the evidence is probative of severe recklessness
once they became members of the Board of Directors and no action was taken to
correct the alleged improper conduct.  *See In re Southeast Banking Corp.*, 69 F.3d
1539, 1550-51 (11th Cir. 1995) (appellate court reversed the dismissal of a claim
against corporate directors where the complaint alleged a continuing pattern of
improper conduct spanning a time period which included the period the dismissed
directors served on the board).

intentionally failed to take steps to correct the artificially inflated valuations of the Funds' holdings," or that they "knew or intended" or "knew and recklessly disregarded" that false information about the Funds' investments would be included in the NAV statements.  DE 131 at ¶¶ 98, 314-16.  Now, the SAC pleads with much more specificity eight "red flags" indicating that the Director Defendants either knew or recklessly ignored: (1) the pattern of tiny purchases of unrestricted shares in certain target companies coinciding with the calculation of the NAVs (and CFS fees) that served no apparent business purpose; (2) between 1998 and 2002, that the book-value, or cost, of the Fund's holdings, most of which were restricted shares, was obviously out of proportion to the reported market value of the holdings; (3) the inexplicable appreciating trend in the Funds' value during the class period, even as global equity markets suffered historic declines beginning at the conclusion of 1999; (4) the highly suspect concentration of the Funds' holdings in the thinly-traded target companies for each of the years between 2000 and 2003; (5) as of December 31, 2001, the highly suspect increase in value assigned to these restricted holdings; (6) the fact that a substantial percentage of these holdings were obtained for little or no cost through the exercise of warrants, options or debt conversions, then valued without regard to their worth; (7) that these holdings' valuations were increasingly, and suspiciously, being determined by Lauer and Lancer Management; and (8) numerous valuation and operational red flags apparent from even a cursory look at the operations of the target companies.  SAC ¶¶ 236-39, 243-288, Ex. J.

Plaintiffs assert that these errors were too obvious to ignore, and as the documents and e-mails attached to the SAC suggest, many of these errors were in fact perceived by the individual Director Defendants. *See, e.g., In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1358-59 (S.D. Fla. 2005) (finding defendant should have grown suspicious of earnings and investigated when faced with significant red flag of article critical of accounting irregularities[8]); *In re Eagle building Tech., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1328-29 (S.D. Fla. 2004).  In *Eagle*, the Court explained that numerous red flags, such as inconsistent purchase orders in sham Indian sales, that payments from sham sales came from defendant's bank and an entity that was not a party to the orders, documentation that sales to India were not arms-length, and the fact that a January purchase order was 13 times greater than a June order, should have led defendants to investigate discrepancies and supported a strong inference of scienter.  *Eagle* 319 F. Supp. 2d at 1323-24, 1328-29.  "The more serious the error, the less believable are defendants' protest that they were completely unaware of [the company's] true financial status and the stronger the inference that defendants must have known about the discrepancy."  *Id.* at 1328 (citation omitted).

---

[8] "[I]t stretches the imagination that a CEO would not have been at least suspicious about a $35 million swing in pension status or a 272% increase in earnings (on only a 10% increase in sales)."

Despite the allegations of the e-mails and memoranda discussed above which support the conclusion that the red flags were known to the Director Defendants, it is alleged that the Director Defendants continued to authorize the issuance of false and misleading statements to investors.  These documents also support the conclusion that the Director Defendants knew about the erroneous valuation methodology for restricted shares, knew about the remarkably shaky *bona fides* of the investments in the Funds, and that the Director Defendants were able (and obliged) to investigate the Funds' holdings' valuations, bolstering the red flag allegation.

According to the SAC, Quilligan and other Director Defendants expressed serious concern in their e-mail exchanges about the accuracy of Lauer's valuation of the Funds and the small trades at the end of the month.  They discussed "exit strategies," resigning from the relationship with Lauer, and consulting counsel as soon as possible.  SAC ¶¶ 232-235.  In light of these allegations, the Court cannot conclude, as a matter of law, that these red flags were consistent with Lauer's "unique and risky" investment strategy.  At this pleading stage, the Court finds the totality of the factual allegations in the SAC support a cognizable inference of scienter under 15 U.S.C. § 78u-4(b)(2) when considering the SAC's allegations of numerous and repeated red flags flouting the suspicious nature of the Funds' value, the documents and e-mails attached to the SAC suggesting knowledge on the part of CFS, the enormous magnitude of the fraud which spanned several years, and the financial motive behind the NAV manipulation previously considered by the Court.

**Section 20(a) Claim**

In the Eighth Claim for Relief, Plaintiffs purport to state a claim against each of the Director Defendants as a "control person" of CFS pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), which provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

The Eleventh Circuit has held that in order to state a claim for controlling person liability under § 20(a), a plaintiff must allege facts that establish (1) a primary violation of the securities laws by a controlled person; (2) that the defendant had the power to control the general business affairs of the controlled person; and (3) that the defendant had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability. *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).  Plaintiffs conclusory allegations against these individuals are wholly inadequate to establish control person liability.

In the single count for control person liability, Plaintiffs set forth the legal conclusion, without supporting facts, that the Citco Directors controlled CFS:

> At all relevant times, [Messrs. Conroy, Quilligan, Stocks and
> Verhooren] had the power, both direct and indirect, to
> control [CFS], which was a division of [CGL], did in fact
> exercise such control and was therefore controlling a
> person within the meaning of Section 20(a) of the
> Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)).

SAC ¶ 349.  Even though Plaintiffs have adequately stated a Section 10(b) claim

against CFS, Plaintiffs fail to plead sufficient facts to show that any of the Director

Defendants had both the power to control the general affairs of CFS and the power to

influence the specific corporate policy which resulted in the alleged primary liability.

*Brown*, 84 F.3d at 396.

Plaintiffs point to their allegations that the Director Defendants supervised

CFS's administration of the Fund, and that the Director Defendants acted on behalf of

CFS.  SAC ¶¶ 97-99, 127-129, Exs. B, H-K.  These allegations do not, without more,

satisfy the pleading standard for alleging control status.  A plaintiff must "allege facts

sufficient to satisfy . . . the three prongs" of the test stated by the Eleventh Circuit.

*Theoharous*, 256 F.3d at 1227.  Allegation that restates the legal standard for control

person liability but fails to provide facts to support these allegations does not

adequately plead control person liability.  Accordingly, this claim is dismissed without

prejudice.

## Common Law Claims

## Common Law Fraud[9]

The elements of common law fraud in Florida are:

(1)    A false statement concerning a material fact.

(2)    Knowledge by the person making the statement that the representation is false.

(3)    The intent by the person making the statement that the representation will induce another to act on it.

(4)    Reliance on the representation to the injury of the other party.

See Tucker v. Mariani, 655 So.2d 221, 225 (Fla. Dist Ct. App. 1995) (citing Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984)); see also Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir. 1999).

The elements of common law fraud in both Florida and the British Virgin Islands ("BVI") are substantially similar to those governing § 10(b), except the scienter requirement for a common-law fraud claim is more stringent.  It requires that one plead actual knowledge of falsity, as opposed to the scienter requirement of severe recklessness that has been discussed above.  Tapken v. Brown, No. 90-6910-CIV-MARCUS, 1992 WL 178984, at *23 (S.D. Fla. Mar. 13, 1992); see also Anderson v. Transglobe Energy Corp., 35 F. Supp. 2d 1363, 1370 (M.D. Fla. 1999).

---

[9]  In its previous Order, the Court did not address Director Defendants' challenge to Plaintiffs' common law fraud claim because the Complaint was dismissed without prejudice to conduct jurisdictional discovery.  DE 291 at 17.

Director Defendants argue that for the same reasons Plaintiffs have failed to plead scienter in their federal securities fraud claim, they have also failed to plead scienter for common law fraud.  As the Court has now found that Plaintiffs *have* met the pleading requirement for scienter in their federal securities fraud claims, this argument fails.  In addition, Plaintiffs plead that the Director Defendants *knowingly* made false and misleading statements of material fact and omitted to state material facts regarding the management, performance and value of the Funds.  SAC ¶¶ 228-235.  The new factual allegations and exhibits attached to the SAC adequately present a claim for common law fraud including actual knowledge.

## Holder Claims

Director Defendants simply adopt the arguments made in CFS's motion that "Plaintiffs' purported 'holder claims' fail to state a claim under Florida law."  DE 317 at 18.  According, the Court repeats the conclusions it made regarding this claim in the Order ruling on CFS's Motion to Dismiss:

Defendants attack Plaintiffs allegations that they were fraudulently induced to purchase and/or retain ownership of shares in the Funds at inflated values and to retain those shares until such time as the Funds were unable to honor redemption requests, causing them to lose a substantial portion of their investment.  SAC ¶¶ 358-59.  Director Defendants assert that these holder claims are not actionable under the

common law of Florida[10] and, even if they are, they are not properly pled.

In *Small v. Fritz Companies, Inc.*, the Supreme Court of California recognized common law holder claims but imposed a heightened pleading standard on the element of reliance on alleged misrepresentations.

> In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status, the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied upon the misrepresentations. Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market.

*Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 184-85 (Cal. 2003).  In *Rogers v. Cisco Systems, Inc.*, the Northern District of Florida predicted that Florida state courts would recognize a cause of action in fraud for holder claims and would require the same specificity as in *Small*.  *See* 268 F. Supp. 2d 1305, 1314 (N.D. Fla. 2003) (quoting the above passage from *Small*).  In *Rogers*, plaintiffs alleged that they relied on defendant's misrepresentations in deciding to retain their shares, but had they known

---

[10]  Director Defendants argue that "[n]o Florida state court has expressly held that "holder claims" are viable under Florida law."  DE 319 at 14.  Plaintiffs respond that the reverse is also true in that no Florida case has expressly held that "holder claims" are invalid in Florida.  The only guidance available from the Eleventh Circuit leaves the question open:  "while holding claims are not actionable under federal securities laws, they may well be actionable under state law."  *Riley v. Merrill Lynch*, 292 F.3d 1334, 1343 (11th Cir. 2002).

the true financial condition of the company they would have sold their shares before the stock price plummeted as a result of the company's disclosure of accurate financial reports. *See id.* at 1309-10. The *Rogers* Court found that plaintiffs' allegations were too vague to be actionable: "The Plaintiffs allege that they would have sold their stock had they known the truth about Cisco's financial status. However, they do not allege specifically, how many shares they would have sold and when they would have sold them." *Id.* The purpose of the "heightened burden of pleading reliance" is to separate "plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value." *Id.* at 1314 n.18. The Court in *Rogers* this claim dismissed with leave to amend in accordance with *Small's* heightened pleading requirements.

Plaintiffs urge the Court not to adopt this heightened pleading requirement, especially in light of the fact that a substantial part of the Director Defendants' alleged misdeeds were in the form of omissions of material fact. *Compare Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151 (1972); *Ross v. Bank South,* 885 F.2d 723, 728 (11th Cir. 1989) ("[I]n the case of an omission rather than a misstatement reliance may be presumed when the plaintiffs could justifiably expect that the defendants would have disclosed the material information"); *Gerrard v. A.J. Gerrard & Co.*, 285 F. Supp. 2d 1331, 1345 (S.D. Ga. 2003); *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315 (S.D. Fla. 1996) (presumption of reliance in cases involving primarily

omissions).

The Court rejects Plaintiffs' distinction between a misrepresentation of material fact and an omission of material fact in relation to a holder claim. Even in cases of material omissions, a Plaintiff asserting a holder claim should be required to allege that, if the material information had been disclosed, he would have sold the shares, the amount of shares he would have sold, and when he would have sold them in relation to the time the material information should have been disclosed.

There is no definitive determination regarding the viability of a holding claim under Florida common law. Even assuming that such a claim exists, Plaintiffs have failed to allege a valid holder claim. As a result, Plaintiffs will be given one additional opportunity to do so.[11]

**Negligence and Breach of Fiduciary Duty**

The Director Defendants assert that Fla. Stat. § 607.0831 (the "business judgment rule") bars Plaintiffs' claims for negligence and breach of fiduciary duty. Plaintiffs respond that the Director Defendants are not protected by Fla. Stat. § 607.0831 for "willful misconduct," and in addition, they are alleging claims against the Director Defendants not simply in their capacities as Directors of the Funds, but also by virtue of their employment with the Citco Defendants.

---

[11] The Court will reserve for another day a ruling on whether a holder claim exists under Florida law.

The Court finds that the threshold issue of which state law should apply to these claims must be resolved before the Court applies Florida's business judgment rule to the claims.  It is unclear whether Florida or some other jurisdiction's law applies to the actions alleged on behalf of the Director Defendants.  A conflict of law analysis at this point is premature.

Moreover, it has been recognized that the fact-based business judgment defense should not be considered on a motion to dismiss.  *In re Luxottica Group S.p.A., Securities Litigation*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003); *In re Southeast Banking Corp.*, 827 F. Supp. 742, 748 (S.D.Fla. 1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).  Because the Court has found that Plaintiffs have adequately alleged severe recklessness, they have therefore alleged more than mere negligence and a breach of fiduciary duty.  Accordingly, the Court will not, at this stage, dismiss the counts for negligence and breach of fiduciary duty.

**Negligent Misrepresentation**

Director Defendants argue that for the same reasons the SAC fails to plead with particularity a claim for securities law fraud and common law fraud, it similarly fails to plead a claim for negligent misrepresentation.  As the Court has now found that Plaintiffs *have* met the pleading requirement for securities law fraud and common law fraud, this argument fails.

**Aiding and Abetting**

In their Eleventh and Twelfth Claims for Relief, Plaintiffs bring claims against Director Defendants for alleged aiding and abetting common law fraud (SAC ¶¶ 368-75) and aiding and abetting breach of fiduciary duty (SAC ¶¶ 376-82).

Aiding and abetting a fraud may be a valid cause of action in Florida.  If such a cause of action does exist, then the following are the elements that must be established by the plaintiff: (1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided *substantial assistance* to advance the commission of the fraud.  *ZP No. 54 Ltd. Partnership v. Fidelity and Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005) (emphasis supplied).  Similarly, a claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's *substantial assistance* or encouragement of the wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla. 2002) (emphasis supplied); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

Director Defendants argue that the SAC fails to allege liability on their part for aiding and abetting a fraud or breach of fiduciary duty by Lauer because it fails to allege facts to support the element of substantial or affirmative assistance in Lauer's alleged "marking-the-close" scheme, which is the heart of Plaintiffs' alleged fraud and breach

of fiduciary duty claims.  Plaintiffs do not address the Director Defendants' attack on this claim.  As the Court reasoned in its Order granting in part and denying in part CFS's motion to dismiss, Plaintiffs have failed to state claims for aiding and abetting by failing to allege adequately the element of substantial assistance.

**Leave to Amend**

Plaintiffs have requested leave to amend the SAC should this Court find it deficient.  Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

<u>Conclusion</u>

For the foregoing reasons, Defendants Kieran Conroy, Declan Quilligan, Anthony J. Stocks and John M.S. Verhooren's Motion to Dismiss Plaintiffs' Consolidated Second Amended Securities Class Action Complaint **[DE 317] is GRANTED IN PART AND DENIED IN PART**, without prejudice, with leave to replead within twenty days of receipt of this Opinion and Order in a manner consistent with this Opinion.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2007.

_____
KENNETH A. MARRA
United States District Judge

copies:
All counsel of record