UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-23044-Civ-MARRA

JOHN BRUHL, KEITH ROTMAN and
SCOTT MALTZ, individually and on
behalf of all others similarly situated

     Plaintiffs

vs.

PRICE WATERHOUSECOOPERS
INTERNATIONAL, et al

     Defendants.
_____/

ORDER AND OPINION ON CITCO FUND SERVICES
(CURACAO), N.V.'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant, Citco Fund Services

(Curacao), N.V.'s Motion to Dismiss Plaintiffs' Consolidated Second Amended

Securities Class Action Complaint  [DE 319].  This motion is fully briefed and ripe for

review.

Previously, Citco Fund Services (Curacao), N.V. ("CFS")  filed a Motion to

Dismiss addressed to Plaintiffs' Consolidated Amended Securities Class Action

Complaint.  On March 31, 2006, the Court granted in part and denied in part that

motion.  *See* DE 292.  Specifically, the Court found that Plaintiffs' original complaint

adequately pled all the elements of a Section 10(b) claim pursuant to the Securities

Exchange Act against CFS aside from the element of scienter.  With respect to CFS's

primary liability, the Court ruled that allegations in the original complaint:

> go beyond alleging that CFS merely aided and abetted Lauer by distributing the fraudulent information. These allegations assert that CFS calculated the Funds' [Lancer Offshore, Inc.] monthly NAVs [net asset value] and distributed them to the Funds' investors; that these NAV statements contained fraudulent values despite information contained in B of A [Banc of America Securities, LLC] position reports to which it was privy; and that CFS knew or was reckless in not knowing that the NAVs were grossly inflated.  Based upon these monthly and annual NAV statements, investors made investment decisions to either make additional investments in the Funds, or to retain their shares and forego the opportunity to redeem them.  Plaintiffs also assert the necessary element of reliance upon the misstatements or omissions which were publicly attributable to CFS.  These allegations meet the requirements for the bright line test.  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001).  Accordingly, the claims against CFS will not be dismissed for failure to allege primary liability.

DE 292 at 9-10 (footnote omitted).  With respect to particularization of the alleged misstatements, the Court concluded that:

> the Complaint alleges a pattern of conduct with examples of specific trades that were manipulated and specific statements that were false.  The Complaint identifies NAV statements containing fraudulent valuations for Fidelity First Financial Corporation, Biometrics, SMX Corp., Xtra Card, and Total Film Group, for the periods of December 31, 2000 through April 30, 2003.  Am. Compl. ¶¶ 81, 88-89.  The Complaint also specifies the practices that led to the issuance of such reports and supports these allegations with stock prices.  Am. Compl. ¶¶ 83-86.

> After reviewing the Amended Complaint, it appears that it clearly apprises CFS of Plaintiffs' contention that the NAVs in the monthly statements were fraudulent.  It specifies

the misstatements (the actual NAV numbers in the monthly statements after March, 2000), how they were fraudulent (they grossly overstated the actual value of the Funds' assets), to whom they were made (each investor who received them on a monthly basis), and that Plaintiffs relied on them to their detriment (they would otherwise not have purchased the shares). *Durham v. Business Management Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988); *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985). Accordingly, the Amended Complaint as to CFS will not be dismissed for lack of particularity.

DE 292 at 12-13.  However, the Court explained that the scienter allegations

concerning CFS lacked

the necessary specific factual allegations to support actual knowledge or recklessness.  Even though the magnitude of the Lancer fraud was enormous,[1] even though the fraud spanned several years, and even though CFS may have benefitted financially by the overinflation, these three facts do [not] add up to strong circumstantial evidence of conscious misconduct or severe recklessness.

DE 292 at 16.

On April 28, 2006, Plaintiffs filed their Consolidated Second Amended

Complaint ("SAC") [DE 300].  CFS has filed its second motion to dismiss asserting that

the SAC suffers from the same infirmity as before and must be dismissed for failure,

once again, to plead scienter with sufficient particularity.  CFS further argues that

---

[1]  The Funds' assets were overvalued by over $565 million based on Lauer's manipulation of the NAV.  Am. Compl. ¶ 89. "Even a cursory investigation by an auditor or fund administrator would have shown that assets valued at $750 million or more had a true NAV of less than a fraction of 1% of that amount."  Am. Compl. ¶ 208(c).

Plaintiffs' "holder claims" must be dismissed and that the common law claims also fail for a number of reasons.

**Pleading Requirements**

Section 10(b) of the Securities and Exchange Act of 1934 makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (2000). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5 to plead (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1446 (11th Cir. 1997).

Allegations of security fraud under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b) ("Rule

9(b)").  Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).  The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs. . . ." *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1369 (M.D. Fla. 1999). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985).

Generally, in order to survive a Rule 9(b) challenge, the complaint must specify: (1) what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir. 1997)).

In December 1995, Congress enacted the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4(b) ("PSLRA"), which heightens the pleading

requirements for Rule 10b-5 claims.  Under the PSLRA, Plaintiffs must, "with respect

to each act or omission alleged to violate [the Exchange Act], state with particularity

facts giving rise to a strong inference that the defendant acted with the required

state of mind."  15 U.S.C. § 78u-4(b)(2).  This requirement applies to the scienter

element of a Section 10(b) claim and requires that the defendant's intent "to

deceive, manipulate, or defraud" be stated with particularity.  *Bryant v. Avado*

*Brands, Inc*. 187 F.3d 1271, 1281-82 (11th Cir. 1999).

**Does the Second Amended Complaint Allege Scienter With Particularity?**

The crux of CFS's motion is that Plaintiffs have still not adequately pled either

actual knowledge or severe reckless.[2]

Whether an inference of scienter arises from the pleaded facts is a specific

inquiry to be determined on a case-by-case basis after a review of the totality of the

factual allegations in the complaint.  *See, e.g., In re Sunbeam Sec. Litig.*, 89 F. Supp.

2d 1326, 1339 (S.D. Fla. 1999) ("In the context of the entirety of the facts alleged in

the complaint," an inference of scienter could be drawn); *In re Eagle Bldg. Tech Inc.,*

---

[2] The Eleventh Circuit has explained that the requisite "strong inference" can be pled only by alleging "severe recklessness." *Ziemba*, 256 F.3d at 1202.  Severe recklessness requires more than "inexcusable negligence." *Id.; see also Ernst & Ernst v. HochfelderI*, 425 U.S. 185, 193 n.12 (1976).  The Eleventh Circuit has defined "severe recklessness" as those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers and sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

*Sec. Litigation*, 319 F. Supp. 2d 1318, 1327 (S.D. Fla. 2004) ("[T]he issue of scienter

itself is very fact specific, requiring consideration of each individual factor as well as

the context as a whole").  Thus, factors such as a reckless or improper audit, the

magnitude of the fraud, and "red flags,"[3] should be examined individually, with the

context as a whole also playing a role in this Court's consideration.  *Id.*; *In re*

*MicroStrategy, Inc., Sec. Litig.*, 115 F. Supp. 2d 620, 649 (E.D. Va. 2000).  Scienter

may even be demonstrated by strong circumstantial evidence or allegations.  *See,*

*e.g., In re PSS World Med., Inc. Sec. Litig*, 250 F. Supp. 2d 1335, 1344 (M.D. Fla. 2002)

("Plaintiffs can meet their burden under the PSLRA if they plead facts constituting

'strong circumstantial evidence of conscious misconduct or severe recklessness'");

*Sunbeam*, 89 F. Supp. 2d at 1338 (circumstantial evidence strongly suggested that

defendants acted with scienter).

    Plaintiffs claim that the SAC's allegations collectively, at a minimum, raise a

strong inference of CFS's scienter.  Plaintiffs assert that the SAC sets forth with

particularity that CFS recklessly ignored numerous red flags and provides direct

evidence of CFS's conscious misbehavior.  In the alternative, Plaintiffs assert that

scienter may be imputed to CFS based on knowledge and misconduct of CFS Directors

---

[3] "Red flags" are "those facts which come to the attention of a [defendant] which would place a reasonable [defendant] on notice that the . . . company was engaged in wrongdoing to the detriment of its investors."  *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004)(citation omitted).

Conroy, Quilligan and Stocks.[4]

**Severe Recklessness**

The new facts alleged in the SAC show that throughout the class period, CFS and other Citco-related defendants authored memoranda and e-mails discussing that the NAVs were highly suspect and were probably being manipulated, in part because restricted securities were being valued without a sufficient discount.  For example, it is alleged that as far back as 1996, CFS's Meijer wrote to CFS's Quilligan, Stocks and Verhooren specifically raising his concern that "Citco values the restricted securities immediately as common shares, which results in most of the cases directly in a high unrealized gain on the deal" which, he deemed, was "improper."  SAC ¶ 229, Ex. H.

These allegations are sufficient to show that CFS knew that the valuations of the Funds' restricted shares were erroneous and highly suspect from at least 1996 forward.  Moreover, new allegations, if true, would substantiate that CFS knew of Lauer's small month-end trades that had no business purpose, except to inflate the NAV value and CFS's fees.  SAC ¶¶ 234-35, Ex. J, K.  Yet, as already indicated, it is

---

[4]    In its previous Order, the Court found, that "[i]f, however, Plaintiffs are able to allege scienter (as well as all the other required elements) as to any CFS employed Director Defendant, the conduct or knowledge gained within the scope of his employment may be imputed to CFS. *In re Sunbeam Securities Litigation*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla.1999) ("While Sunbeam is correct that not all acts of a corporation's officers can be attributed to the corporation, courts have uniformly held that the acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation.  Moreover, the knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to the corporation") (citations omitted)."  DE 292 at n.15.

alleged that CFS disseminated NAV Statements containing these valuations to investors.

In addition, Plaintiffs argue that CFS was aware of various red flags which support an inference of scienter.  CFS asserts that these red flags are insufficient as a matter of law to put CFS on notice that Lauer was committing market manipulation and fraud.  CFS argues that the fact that the Funds employed a unique and risky investment strategy to succeed in a down market was the very basis upon which the Funds were marketed to investors.  The red flags alleged by Plaintiffs were, according to CFS, consistent with Lauer's investment strategy, which was fully disclosed to investors in the Placement Memoranda.

The SAC pleads eight red flags that CFS either knew or recklessly ignored: (1) the pattern of tiny purchases of unrestricted shares in certain target companies coinciding with the calculation of the NAVs (and CFS fees) that served no apparent business purpose; (2) that the book-value, or cost, of the Fund's holdings, most of which were restricted shares, was obviously out of proportion to the reported market value of the holdings; (3) the inexplicable appreciating trend in the Funds' value during the class period, even as global equity markets suffered historic declines; (4) the highly suspect concentration of the Funds' holdings in the thinly-traded target companies; (5) the highly suspect increase in value assigned to these restricted holdings; (6) the fact that a substantial percentage of these holdings were obtained for little or no cost through the exercise of warrants, options or debt conversions,

then valued without regard to their worth; (7) that these holdings' valuations were increasingly, and suspiciously, being determined by Lauer and Lancer Management; and (8) numerous valuation and operational red flags apparent from even a cursory look at the operations of the target companies.  SAC ¶¶ 236-39, 243-288, Ex. J.

Plaintiffs assert that these errors were too obvious to ignore, and as the documents and e-mails attached to the SAC arguably show, many of these errors were in fact perceived by CFS.  *See, e.g., In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1358-59 (S.D. Fla. 2005) (finding defendant should have grown suspicious of earnings and investigated when faced with significant red flag of article critical of accounting irregularities[5]); *In re Eagle building Tech., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1328-29 (S.D. Fla. 2004).  In *Eagle*, the Court explained that numerous red flags, such as inconsistent purchase orders in sham Indian sales, that payments from sham sales came from defendant's bank and an entity that was not a party to the orders, documentation that sales to India were not arms-length, and the fact that a January purchase order was 13 times greater than a June order, should have led defendants to investigate discrepancies and supported a strong inference of scienter. *Eagle* 319 F. Supp. 2d at 1323-24, 1328-29.  "The more serious the error, the less believable are defendants' protest that they were completely unaware of [the

---

[5]  "[I]t stretches the imagination that a CEO would not have been at least suspicious about a $35 million swing in pension status or a 272% increase in earnings (on only a 10% increase in sales)."

company's] true financial status and the stronger the inference that defendants must have known about the discrepancy."  *Id.* at 1328 (citation omitted).

Despite the e-mails and memoranda discussed above which are alleged to show knowledge by CFS, it is further alleged that CFS continued to issue false and misleading statements to investors.  Arguably, these documents also show that CFS knew about the erroneous valuation methodology for restricted shares, knew about the remarkably shaky *bona fides* of the investments in the Funds, and that CFS was able (and obliged) to investigate the Funds' holdings' valuations, bolstering the red flag allegation.

According to the allegations of the SAC, Quilligan and others at CFS expressed serious concern in their e-mail exchanges about the accuracy of Lauer's valuation of the Funds and the small trades at the end of the month.  They discuss "exit strategies," resigning from the relationship with Lauer, and consulting counsel as soon as possible.  SAC ¶¶ 232-235.  In light of these allegations, the Court cannot conclude, as a matter of law, that these red flags were consistent with Lauer's "unique and risky" investment strategy.  At this pleading stage, the Court finds the totality of the factual allegations in the SAC support a cognizable inference of scienter under 15 U.S.C. § 78u-4(b)(2) when considering the SAC's allegations of numerous and repeated red flags flouting the suspicious nature of the Funds' value, the documents and e-mails attached to the SAC suggesting knowledge on the part of CFS, the enormous magnitude of the fraud which spanned several years, and the

financial motive behind the NAV manipulation previously considered by the Court.

**Common Law Claims**

**Common Law Fraud**[6]

The elements of common law fraud in Florida are:

(1)     A false statement concerning a material fact.

(2)     Knowledge by the person making the statement that the representation is false.

(3)     The intent by the person making the statement that the representation will induce another to act on it.

(4)     Reliance on the representation to the injury of the other party.

*See Tucker v. Mariani,* 655 So.2d 221, 225 (Fla. Dist Ct. App. 1995) (citing *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984)); *see also Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).

The elements of common law fraud in both Florida and the British Virgin Islands ("BVI") are substantially similar to those governing § 10(b), except the scienter requirement for a common-law fraud claim is more stringent.  It requires that one plead actual knowledge of falsity, as opposed to the scienter requirement of severe recklessness that has been discussed above.  *Tapken v. Brown,* No. 90-6910-CIV-MARCUS, 1992 WL 178984, at *23 (S.D. Fla. Mar. 13, 1992); *see also Anderson v.*

---

[6] In its previous Order, the Court found that since Plaintiffs had failed to plead a securities fraud claim under § 10(b) for failing to allege adequately scienter as to CFS, Plaintiffs had similarly failed to plead a claim for common law fraud.  DE 292 at 21.

*Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1370 (M.D. Fla. 1999).

CFS argues that for the same reasons Plaintiffs have failed to plead scienter in their federal securities fraud claim, they have also failed to plead scienter for common law fraud.  As the Court has now found that Plaintiffs *have* met the pleading requirement for scienter in their federal securities fraud claims, this argument fails. In addition, Plaintiffs plead that CFS *knowingly* made false and misleading statements of material fact and omitted to state material facts regarding the management, performance and value of the Funds.  SAC ¶¶ 352-60.  The new factual allegations and exhibits attached to the SAC adequately present a claim for common law fraud including actual knowledge.

**Holder Claims**

Defendants attack Plaintiffs allegations that they were fraudulently induced to purchase and/or retain ownership of shares in the Funds at inflated values and to retain those shares until such time as the Funds were unable to honor redemption requests, causing them to lose a substantial portion of their investment.  SAC ¶¶ 358-59. CFS asserts that these holder claims are not actionable under the common law of Florida[7] and, even if they are, they are not properly pled.

---

[7] CFS argues that "[n]o Florida state court has expressly held that "holder claims" are viable under Florida law."  DE 319 at 14.  Plaintiffs respond that the reverse is also true in that no Florida case has expressly held that "holder claims" are invalid in Florida.  The only guidance available from the Eleventh Circuit leaves the question open:  "while holding claims are not actionable under federal securities laws, they may well be actionable under state law."  *Riley v. Merrill Lynch*, 292 F.3d

In *Small v. Fritz Companies, Inc.*, the Supreme Court of California recognized common law holder claims but imposed a heightened pleading standard on the element of reliance on alleged misrepresentations.

> In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status, the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied upon the misrepresentations. Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market.

*Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 184-85 (Cal. 2003).  In *Rogers v. Cisco Systems, Inc.*, the Northern District of Florida predicted that Florida state courts would recognize a cause of action in fraud for holder claims and would require the same specificity as in *Small*.  *See* 268 F. Supp. 2d 1305, 1314 (N.D. Fla. 2003) (quoting the above passage from *Small*).  In *Rogers*, plaintiffs alleged that they relied on defendant's misrepresentations in deciding to retain their shares, but had they known the true financial condition of the company they would have sold their shares before the stock price plummeted as a result of the company's disclosure of accurate financial reports.  *See id.* at 1309-10.  The *Rogers* Court found that plaintiffs' allegations were too vague to be actionable:  "The Plaintiffs allege that they would

---

1334, 1343 (11th Cir. 2002).

have sold their stock had they known the truth about Cisco's financial status. However, they do not allege specifically, how many shares they would have sold and when they would have sold them." *Id.* The purpose of the "heightened burden of pleading reliance" is to separate "plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value." *Id.* at 1314 n.18. The Court in *Rogers* dismissed the claim with leave to amend in accordance with *Small's* heightened pleading requirements.

Plaintiffs urge the Court not to adopt this heightened pleading requirement, especially in light of the fact that a substantial part of CFS's alleged misdeeds were in the form of omissions of material fact. *Compare Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151 (1972); *Ross v. Bank South,* 885 F.2d 723, 728 (11th Cir. 1989) ("[I]n the case of an omission rather than a misstatement reliance may be presumed when the plaintiffs could justifiably expect that the defendants would have disclosed the material information"); *Gerrard v. A.J. Gerrard & Co.*, 285 F. Supp. 2d 1331, 1345 (S.D. Ga. 2003); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) (presumption of reliance in cases involving primarily omissions).

The Court rejects Plaintiffs' distinction between a misrepresentation of material fact and an omission of material fact in relation to a holder claim. Even in cases of material omissions, a Plaintiff asserting a holder claim should be required to allege that, if the material information had been disclosed, he would have sold the

shares, the amount of shares he would have sold and when he would have sold them in relation to the time the material information should have been disclosed.

There is no definitive determination regarding the viability of a holding claim under Florida common law.  Even assuming that such a claim exists, Plaintiffs have failed to allege a valid holder claim.  As a result, Plaintiffs will be given one additional opportunity to do so.[8]

**Negligence and Professional Malpractice**

In this Court previous order dealing with these parties, the Court granted Plaintiffs leave to amend their claim for "Negligence, Negligent Misrepresentation and Professional Malpractice" in separate counts because they were three distinct causes of action pled improperly together.  DE 292 at 22.  While Plaintiffs in the SAC have separated out the negligent misrepresentation claim, they have continued to join the negligence claim with the professional malpractice claim.  *See* Plaintiffs' Thirteenth Claim for Relief at p. 115-117 of the SAC.  This should be corrected by Plaintiffs in their Third Amended Complaint.  Because the Court previously ruled that Plaintiffs adequately stated causes of action for negligence and negligent misrepresentation, the Court will only address the validity of the professional malpractice claim.

---

[8]  The Court will reserve for another day a ruling on whether a holder claim exists under Florida law.

In their Thirteenth Claim for Relief, "Against the Citco Defendants for Negligence and Professional Malpractice," Plaintiffs purport to state a claim for professional malpractice against CFS.  SAC ¶¶ 383-391.  In its previous Order, the Court dismissed without prejudice Plaintiffs' claim for professional malpractice finding Plaintiffs failed to allege any contractual privity between them and CFS, and Plaintiffs made no other argument as to how this claim was viable.  DE 292 at 24.

CFS argues that Plaintiffs' claim for professional malpractice fails again because (1) a fund administrator is not a professional, and (2) they were not in contractual privity with Plaintiffs.  Plaintiffs respond asserting that the cases cited by CFS do not hold that an entity in their position is not a professional, and that privity is not required where, as here, the entity charged with professional malpractice knows that its work will ultimately be provided to a third party, who in turn will rely on that work.  Plaintiffs rely on *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990) to support their argument that contractual privity is not required.

As CFS correctly points out, in order to state a malpractice claim under the authority of *First Florida Bank*, the Plaintiffs are required to show that the defendant "knew" the person who is asserting the claim would rely upon the information provided by the defendant.  Here, Plaintiffs allege that CFS "knew, or reasonably should have known, that Plaintiffs would rely upon" the information in question.  This assertion is too broad.  To overcome the privity hurdle, Plaintiffs must allege CFS "knew."

Moreover, and probably more critical to Plaintiffs' malpractice claim, a profession within the meaning of § 95.11 is "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida."  *See Garden v. Frier*, 602 So.2d 1273, 1275 (Fla.1992).  There are no allegations which would bring CFS, as "an administrator," within the definition of a "professional."  There are no allegations that administrators are required to obtain a four-year degree for licensing in Florida.  SAC ¶ 387.  *See e.g., In Warter v. Boston Securities*, No. 03-81026-CIV-RYSKAMP, 2004 U.S. Dist. LEXIS 5682, at *13 (S.D. Fla.  Mar. 22, 2004) ("a securities broker is not a 'professional' for purposes of the economic loss rule because securities brokers are not required to obtain a four-year degree for licensing in Florida").

Absent allegations that CFS meets the definition of a professional under Florida law, Plaintiffs' malpractice claim must be dismissed.  Plaintiffs will be given one additional opportunity to state a valid malpractice claim.

**Breach of Fiduciary Duty**

In their Tenth Claim for Relief, Plaintiffs allege that the Citco Defendants, as administrators of the Funds, repeatedly breached their fiduciary and related obligations to the Plaintiffs.  SAC ¶¶ 361-67.  In its previous Order, the Court had allowed this claim to remain pending further briefing on whether Florida or the British Virgin Islands better satisfied the "significant relationship test" of the Restatement (Second) of Conflict of Laws.  DE 292 at 25.  Now, the Court may apply

Florida law as it seems the parties have agreed that there is no true conflict between

BVI and Florida law as to the remaining common law claims.

> A fiduciary relationship may be either express or implied.
> See *Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct.
> App. 1994).  Express fiduciary relationships are created by
> contract, such as principal/agent, or can be created by
> legal proceedings in the case of a guardian/ward.  *See id.*
> A fiduciary relationship which is implied in law is based on
> the circumstances surrounding the transaction and the
> relationship of the parties, *see id.*; *Hooper v. Barnett Bank
> of W. Fla.,* 474 So.2d 1253 (Fla. Dist. Ct. App. 1985), and
> may be found when 'confidence is reposed by one party
> and a trust accepted by the other.'  *MVB*, 644 So.2d at 518
> (quoting *Dale v. Jennings*, 90 Fla. 234 (Fla. 1925)).

*Maxwell v. First United Bank*, 782 So.2d 931, 933 -934 (Fla. Dist. Ct. App. 2001); *Lanz*

*v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (fiduciary

relationship is recognized under Florida law when there is a showing of dependency

by one party and some undertaking by the other party to advise, counsel and protect

that party).  CFS argues that there are no allegations to support a claim that CFS

voluntarily assumed a duty to advise, counsel, and protect the Plaintiffs.  CFS asserts

that Plaintiffs have failed to allege that it owed them any duty beyond the

contractual duty it owed the Offshore Funds.

Plaintiffs assert that they have alleged that they reposed trust and confidence

in CFS and its agents, and that CFS readily accepted that trust and confidence.

Plaintiffs fail to cite a paragraph for such allegations because no such allegations on

behalf of CFS exist in the SAC.  The allegations in the SAC fall far short of stating a

claim that the CFS owed a fiduciary duty to Plaintiffs.  Accordingly, the motion to dismiss this count will be granted, with leave to amend.

**Aiding and Abetting**

In their Eleventh and Twelfth Claims for Relief, Plaintiffs bring two claims against CFS for alleged aiding and abetting liability: aiding and abetting common law fraud (SAC ¶¶ 368-75) and aiding and abetting breach of fiduciary duty (SAC ¶¶ 376-82).

Aiding and abetting a fraud may be a valid cause of action in Florida.  If such a cause of action does exist, then the following are the elements that must be established by the plaintiff: (1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided ***substantial assistance*** to advance the commission of the fraud.  *ZP No. 54 Ltd. Partnership v. Fidelity and Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005) (emphasis supplied).  Similarly, a claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's ***substantial assistance*** or encouragement of the wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla. 2002) (emphasis supplied); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

CFS argues that the SAC fails to allege liability on their part for aiding and abetting a fraud or a breach of fiduciary duty by Lauer or the Director Defendants because it fails to allege facts to support the element of substantial or affirmative assistance in Lauer's alleged "marking-the-close" scheme, which is the heart of Plaintiffs' alleged fraud and breach of fiduciary duty claims.  Plaintiffs do not address this argument except to cite *Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986) for the proposition that "[s]tanding idly by while knowing one's good name is being used to perpetrate a fraud is inherently misleading."  *Id*.  This quote is found, however, in that portion of the *Rudolph* opinion dealing with direct fraud, where an accounting firm had actual knowledge of a fraudulent audit report being included in a placement memorandum.  As to aiding and abetting, the Eleventh Circuit in *Rudolph* found that whether the assistance was "substantial" depends on the totality of the circumstances.  *Id*. at 1046.

Instead, this case is akin to *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993), in which the court held that the "substantial assistance" element of an aiding and abetting claim was not met against a law firm that did not actively participate in the fraud.  *Id*.  Therefore, without clear allegations that CFS substantially assisted Lauer or the Director Defendants, the SAC fails to allege adequately proper claims against CFS for aiding and abetting.  Accordingly, for failure to allege adequately the element of substantial assistance, the Court finds that Plaintiffs have failed to state claims for aiding and abetting and the motion to dismiss

Page 21 of  22

this count will be granted, with leave to amend.

**Leave to Amend**

Plaintiffs have requested leave to amend the SAC should this Court find it deficient.  Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

<u>Conclusion</u>

For the foregoing reasons, Defendant, Citco Fund Services (Curacao), N.V.'s Motion to Dismiss Plaintiffs' Consolidated Second Amended Securities Class Action Complaint  [DE 319] is **GRANTED IN PART AND DENIED IN PART**, without prejudice, with leave to replead within twenty days of receipt of this Opinion and Order in a manner consistent with this Opinion.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2007.

KENNETH A. MARRA
United States District Judge

copies:

All counsel of record