UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-23044-Civ-MARRA

JOHN BRUHL, KEITH ROTMAN and
SCOTT MALTZ, individually and on
behalf of all others similarly situated

    Plaintiffs

vs.

PRICE WATERHOUSECOOPERS
INTERNATIONAL, et al

    Defendants.
_____/

## ORDER AND OPINION DENYING THE CITCO GROUP LIMITED'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant The Citco Group Limited's Motion to Dismiss Plaintiffs' Consolidated Third Amended Securities Class Action Complaint [DE 389]. This motion is fully briefed and ripe for review. The Court has carefully considered the motion, response, reply and is otherwise fully advised in the premises.

### Introduction

Previously, the Citco Group Limited ("CGL") filed a Motion to Dismiss addressed to Plaintiffs' Consolidated Second Amended Securities Class Action Complaint ("SAC"). On March 27, 2007, the Court dismissed each purported claim against CGL because, among other reasons, (i) the Plaintiffs did not properly differentiate between Citco Fund Services (Curacao) N.V. ("CFS-Curacao") and CGL

but instead used the term "Citco Defendants" to "attribute the alleged acts and omissions of CFS[-Curacao] to its purported corporate parent, CGL," (ii) Plaintiffs did not meet Fed.R.Civ.P. 9(b)'s heightened pleading requirements for fraud, (iii) the necessary elements of the securities fraud claim against CGL were not expressly alleged, and (iv) there were no specific allegations of actual control by CGL over CFS-Curacao sufficient to support Section 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)") control person liability.  *See* DE 374.

Subsequently, Plaintiffs filed a Third Amended Complaint ("TAC") in which they again allege a securities law violation and various common law claims.  *See* DE 380.  In the TAC, Plaintiffs have dropped all of their claims against CGL with the exception of their Section 20(a) claim, wherein they allege that CGL should be held secondarily liable for CFS-Curacao's purported securities violations and the alleged securities violations of Anthony Stocks ("Stocks") and John M.S. Verhooren ("Verhooren").  CGL has filed its third motion to dismiss asserting Plaintiffs' current Section 20(a) claim suffers from the same infirmities as its predecessor including conclusory allegations as to liability with no specific allegations of actual control by CGL over CFS-Curacao, Stocks and Verhooren.

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct.

2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id*. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*

## Stating a Claim for Control Person Liability

In the prior Order and Opinion on the Citco Group Limited's Motion to Dismiss, the Court dismissed Plaintiffs' Section 20(a) claim because there were "no specific allegations of actual control by CGL over CFS[-Curacao], but only conclusory allegations."  *See* DE 374 at 8.  Plaintiffs now re-plead this count against CGL.  The amended Section 20(a) claim asserts control person liability arising from the primary

violations alleged against defendants CFS-Curacao, Stocks and Verhooren.[1]  Plaintiffs explain that additional allegations against CGL in the TAC are derived from new facts and evidence alleged in the March 6, 2007 complaint filed by Marty Steinberg, Esq., the Court-appointed Receiver in the action entitled, *Court Appointed Receiver of Lancer Offshore, Inc. and the OmniFund, Ltd. v. The Citco Group, et al.*, 05-60080-Civ-Marra (S.D. Fla).

In the TAC's Eighth Claim for Relief, Plaintiffs allege that CGL is derivatively liable for alleged securities law violations of CFS-Curacao, Stocks and Verhooren, as a "control person" under Section 20(a).  TAC ¶¶ 399-406. CGL moves to dismiss this claim arguing the TAC "still does not come close to *alleging facts* that establish that CGL had both the power to control the general affairs of CFS-Curacao and control over the specific corporate policy that resulted in the alleged primary violation."  DE 390 at 7 (emphasis in original).  Plaintiffs respond that the myriad of new factual allegations shows how CFS-Curacao, Verhooren and Stocks reported to CGL and looked to CGL to set the strategy for its business and for dealing with the improprieties at the Funds.

Section 20(a) provides:

> Every person who, directly or indirectly, controls any
> person liable under any provision of this chapter or of any

---

[1]  The Court found the allegations of primary violations by CFS-Curacao, Stocks and Verhooren sufficient in its March 27, 2007 orders concerning those defendants' motions to dismiss.

> rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

The Eleventh Circuit has held that in order to state a claim for control person liability under Section 20(a), a plaintiff must allege facts that establish (1) a primary violation of the securities laws by a controlled person;[2] (2) that the defendant had the power to control the general business affairs of the controlled person; and (3) that the defendant "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001) (citing in part, *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)).  SEC regulations define "control," "controlling" and "controlled by" as, "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 240.12b-2.  A plaintiff must "allege facts sufficient to satisfy . . . the three prongs" of the test stated by the Eleventh Circuit.  *Theoharous*, 256 F.3d at 1227.  Allegations that restate the legal standard for control person liability but fail to provide facts to support these allegations does not adequately plead control person liability.

---

[2] *See* footnote 1.

Power to Control General Business Affairs & Control Over Specific Policy

The first *Theoharous* pong is not an issue. The Court then moves to the second and third *Theoharous* prongs, which require Plaintiffs to allege facts that support the conclusion CGL had the power to control the general business affairs of CFS-Curacao and the power to influence the specific corporate policy which resulted in the alleged primary liability. Allegations as to CGL include:

CGL is an integrated financial services holding company that operates through numerous subsidiaries. TAC ¶ 31. An oversight process links CGL to CFS-Curacao. *Id*. CGL represents that its network is the world's top provider of hedge fund administration services and administers more than 1,200 funds with more than $110 billion in assets. *Id*. CGL represents that by administering funds in offices throughout the world it is able to provide a "consistent service platform" and that it is a "global fund administrator." *Id*. Fund administration services offered by CGL include legal and operational advice, asset valuation services, the preparation of periodic financial statements purportedly in conformity with international and other accounting standards, communication with investors and the maintenance of fund records. *Id*. Substantially all information regarding all of the funds administered by CGL's offices is maintained in a centralized database that can be accessed by the managers of the funds. TAC ¶ 32. CGL does not earn any revenue independent of the revenue generated by its subsidiaries and divisions, and it serves as the vehicle by which its component parts procure business from and conduct extensive fund management

services for funds operated within the United States and around the world.  TAC ¶ 38.

William Keunen ("Keunen") is the Director of Fund Services for CGL.  The managing director of each office of CGL that provides fund administration services reports to Keunen.  TAC ¶ 34.  In his role with CGL, Keunen was involved directly with the issues in this case, as he received and responded to both internal and external e-mail inquiries regarding the Offshore Funds, received and responded to correspondence regarding the Offshore Funds, and engaged in meetings and telephone discussions with various Lancer and Citco personnel regarding the Offshore Funds.  TAC ¶ 35.  Keunen reported to all CGL directors regarding issues that CGL's internal audit department raised in May 2002 regarding the Lancer portfolio and fund valuation.  TAC ¶ 37.  Keunen led a team made up of Defendants Quilligan, Verhooren and Conroy, among others, in an analysis of Offshore's portfolio in the face of growing concerns about its valuations' legitimacy.  TAC ¶¶ 276-285, Exs. J, O-Q. Keunen, acting within his authority as Director of Fund Services for CGL, directed CFS-Curacao to disseminate NAV statements for the Funds, despite knowing them to be false and misleading.  TAC ¶¶ 36, 53.

The e-mails referenced in the TAC open a window to events that indicate a level and type of control that CGL, through Keunen, had over CFS-Curacao's administration of the Funds, including making judgments about the valuations of the portfolios and whether to send at least one NAV statement to investors.  Clearly, the allegation that Keunen directed CFS-Curacao to "send out the NAV for January"

adequately alleges the power to influence the specific corporate policy which resulted in the alleged primary liability.  TAC ¶ 403.  It is also possible, from these allegations and the allegations regarding the structure of CGL and its integrated operations, to infer that CGL had the power to control the general affairs of CFS-Curacao.  At this pleading stage, the Court finds sufficient allegations for Plaintiffs to proceed on their Section 20(a) claim against CGL.[3]

**Conclusion**

In accordance with the findings above, it is hereby

ORDERED AND ADJUDGED that Defendant The Citco Group Limited's Motion to Dismiss Plaintiffs' Consolidated Third Amended Securities Class Action Complaint  [DE 389] is DENIED.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of March, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record

---

[3] Given that the TAC adequately alleges a Section 20(a) claim against CGL through the actions of its Director of Fund Services, Keunen, it is unnecessary to review the allegations made regarding CGL's employees Verhooren and Stocks.