UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-23044-Civ-MARRA/JOHNSON

JOHN BRUHL, KEITH ROTMAN and
SCOTT MALTZ, individually and on
behalf of all others similarly situated

      Plaintiffs

vs.

PRICE WATERHOUSECOOPERS
INTERNATIONAL, et al

      Defendants.

_____/

## ORDER AND OPINION GRANTING CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon the Citco Defendants' Motion to Deny

Class Certification [DE 468]; the Citco Defendants' Request for Hearing on Their

Motion to Deny Class Certification [DE 473]; Plaintiffs' Motion For Certification of the

Litigation Class [DE 568]; and Plaintiffs' Motion to Strike Report of Rene M. Stulz [DE

592]. The Court has carefully considered the motions, responses, replies, and oral

argument of counsel.

## INTRODUCTION

This action arises out of a securities fraud scheme allegedly perpetrated by

hedge fund manager Michael Lauer ("Lauer"), and Defendants, including The Citco

Group Limited ("Citco Group"), Citco Fund Services (Curacao) N.V. ("CFS"), a division

and wholly owned subsidiary of Citco Group, Kieran Conroy, Declan Quilligan, Anthony

J. Stocks, John M.S. Verhooren, John W. Bendall, Jr., and Richard Geist ("Individual Defendants"), fund directors and, except for Bendall and Geist, upper level managers of Citco Group and CFS (collectively "Citco Defendants").  The Consolidated Third Amended Securities Class Action Complaint ("Complaint" or "TAC") was filed on April 13, 2007 [DE 380] after the Court granted in part and denied in part the Citco Defendants' motions to dismiss Plaintiffs' Consolidated Second Amended Securities Class Action Complaint.

The alleged scheme involves three private equity funds: a domestic fund, Lancer Partners, LP; and two offshore funds, Lancer Offshore, Inc. ("Offshore"), and the OmniFund Ltd. ("OmniFund," together with Offshore, the "Funds").  Plaintiffs allege that the scheme was effectuated in two steps: (1) Lauer's and the Funds' investment manager, Lancer Management Group LLC's ("Lancer"), manipulation of the market for various penny and illiquid stocks, resulting in artificially inflated prices for these stocks at the close of each reporting period ("marking the close"); and (2) the Citco Defendants dissemination of fraudulent Net Asset Value ("NAV") statements to investors who then relied upon these false statements to make their investment decisions.  TAC ¶¶ 91, 396, 464.  As a result, investors allegedly purchased shares, or made decisions not to redeem shares, in the Funds based on NAVs that the Citco Defendants were supposed to insure were fairly and accurately calculated, but were not.  Plaintiffs allege these facts were known to the Citco Defendants and that from their very first purchases of shares in the Funds at inflated NAVs, they were

defrauded because they were paying more for the shares than the assets underlying those shares were worth.  They argue class treatment is appropriate under these circumstances and request that the Court grant class certification of Plaintiffs' federal securities causes of action and the state law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

The Citco Defendants oppose class certification asserting that Plaintiffs (1) cannot show that the number of potential class members is so numerous as to render joinder impracticable under Rule 23(a)(1); (2) cannot satisfy the commonality and typicality requirements of Rule 23(a)(2) and (3); (3) cannot show that lead plaintiffs will adequately represent the interests of the class under Rule 23(a)(4); and (4) cannot satisfy Rule 23(b), which requires a finding that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is the superior method for the fair and efficient adjudication of the controversy.

<u>CLASS CERTIFICATION STANDARDS</u>

Questions concerning class certification are left to the sound discretion of the district court.  *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir. 1983). A class action is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and may only be certified if the trial court is satisfied, after a "rigorous analysis," that the prerequisites for certification

have been met.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 155, 161 (1982).  In seeking

certification, the movants have the burden of establishing all of the requirements of

Federal Rule of Civil Procedure 23 ("Rule 23").  *See East Texas Motor Freight Sys.,*

*Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977); *Valley Drug Co. v. Geneva Pharm.,*

*Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).  A class movant is not entitled to any

presumptions under Rule 23.  *See Falcon*, 457 U.S. at 160.  It is not enough to merely

assert entitlement under the rule; the movant must affirmatively demonstrate that

all the requirements of Rule 23 are met.  *See, e.g., Doninger v. Pacific Northwest*

*Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1991) (certification properly denied where

plaintiffs supplied only "meager support").  A class movant cannot shift its burdens to

the non-movant.  *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir.

2001), *reh'g & reh'g en banc denied*, 279 F.3d 313 (5th Cir. 2002).

      Rule 23(a) states that a class may be certified "only if (1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law

or fact common to the class, (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class, and (4) the representative parties

will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a).  If

the court finds that the class criteria of Rule 23(a) are satisfied, it then must also find

that the class fits within one of the three categories of class actions defined in Rule

23(b).

## DISCUSSION

**1.     Numerosity**

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)). Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Amer. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)).

Plaintiffs' alleged class consists of "all securities purchasers and/or holders of shares of Lancer Offshore, Inc. or the OmniFund Ltd. successor fund to the Orbiter Fund, Ltd. and the Viator Fund, Ltd. (collectively the "Funds") during the period of September 3, 1998 through and including July 8, 2003 (the "Class Period")." During the hearing, the Citco Defendants argued the maximum number of members in the

potential class was 53, after deductions for holder claims and nominee accounts; Plaintiffs asserted that the number was at least 93.  Either way, the Court finds that the numerosity requirement of Rule 23 is satisfied.  Moreover, the members of the class are geographically dispersed (investors are located in Hong Kong, Cyprus, Great Britain, France, Canada, Switzerland, the United States, Luxembourg, Bermuda, Ireland and the Bahamas), making joinder impractical.  Kapila Aff. Ex. B.  *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were geographically dispersed across Florida, Georgia and Alabama).

## 2.      Commonality and Typicality[1]

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class.  However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs."  *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996).  The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members."  *In re Terazosin Hydrochloride*, 220

---

[1] "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court has made clear:  The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Falcon,* 457 U.S. at 157 n.13).

F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697

(S.D. Fla. 2004).  However, "a class action must involve issues that are susceptible to

class-wide proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004)

(quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)).

Typicality requires that "the claims or defenses of the representative parties

are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Although

similar to commonality in that it concentrates on the "nexus" between class members

and the named class representative, typicality differs from commonality in that it

focuses on the named class representative's individual characteristics in comparison

to the proposed class.  *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir.

2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000).  Typicality is

satisfied where the named plaintiffs' claims "arise from the same event or pattern or

practice and are based on the same legal theory" as the claims of the class.

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert.*

*denied,* 470 U.S. 1004 (1985); *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D.

Fla. 1992).

"The test for typicality, like commonality, is not demanding."  *In re Disposable*

*Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).  Neither typicality

or commonality require that all putative class members share identical claims, and

both may be satisfied even if some factual differences exist between the claims of

the named representatives and the claims of the class at large. *Prado-Steiman*, 221

F.3d at 1279 n.14.  To defeat typicality, the factual variation of a class

representative "must be clear and must be such that interests of the class are placed

in significant jeopardy." Id. at 686.

The class representatives assert that they were victimized by the same

common fraudulent scheme perpetrated by Defendants on the rest of the class and

have suffered the same type of damages (monetary loss) due to the same unlawful

conduct toward all putative class members.  The common issues of law and fact in

this case include:

- ♦ whether the federal securities laws were violated by Defendants' alleged acts;

- ♦ whether Defendants participated in and pursued the fraudulent scheme or course of business complained of;

- ♦ whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated;

- ♦ whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

- ♦ whether the reported NAV of the Funds provided to investors and upon which investors relied contained material misstatements or omissions;

- ♦ whether the NAVs during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of;

- ♦ whether Defendants violated state law duites; and

- ♦ whether the members of the Class were damaged by Defendants' course of conduct and, if so, the proper measure of such damages.

TAC ¶ 81.

Defendants respond that typicality is not possible due to the unique defenses that exist against John Bruhl ("Bruhl) and Keith Rotman ("Rotman").  "Bruhl's claim is subject to a defense that he is a net redeemer and thus cannot prove damages with respect to his investment in Lancer Offshore.  Rotman's claims likely will be subject to unique defenses such as lack of standing and unclean hands."  DE 469 at 16.  These alleged "unique defenses" do not negate Bruhl's and Rotman's ability to serve as class representatives because Bruhl's and Rotman's claims share the same essential characteristics as the claims of the class at large.  *Auslander*, 244 F.3d at 811; *Cooper*, 390 F.3d at 714.

Bruhl and Rotman, like all the other class members, invested in the Lancer Funds during the class period, lost money, and were allegedly damaged by the fraud alleged in the complaint.  It is uncontroverted that Bruhl did not receive more proceeds from his redemptions than he invested in the two funds.[2]  As for Rotman,

---

[2]  The Citco Defendants argue that Bruhl is not typical of the members of the class because the redemptions he made in Lancer Offshore exceeded his initial investment in that one fund, and on that basis he is not typical.  Plaintiffs respond that in order for Bruhl to be considered a "net redeemer," he would have to have received more funds from his redemptions than he invested in the two funds.  The Receiver determined that Bruhl was not a net redeemer of the OmniFund.  As set forth in the First Omnibus Objection to Claims filed by the Receiver, when the Receiver determined that a claimant received redemptions in excess of subscription payments, he disallowed those claims.  To make this determination, the Receiver compared the amount of capital an investor contributed to an individual fund and subtracted the amounts distributed to that investor in the form of redemptions.  The Receiver reduced Bruhl's OmniFund claim of $3,976,158 to "net invested capital," for an allowable claim of $1,092,419.  *See* Bruhl Deposition Ex. 44.

Citco Defendants have not demonstrated how Rotman's initial purchase of the Funds'

shares through his various companies precludes him from being the beneficial owner

of the shares.  See DE 593 at 9.

To the extent that Bruhl's and Rotman's claims are premised on the same

conduct - i.e., that the Citco Defendants fraudulently misrepresented the net asset

value of the hedge Funds - the named Plaintiffs' claims are sufficiently typical of the

proposed class' claims and based on the same legal theories.  Thus, the Court finds

that commonality and typicality are satisfied.[3]

### 3.    Adequacy

The Court must be satisfied that the "representative parties will fairly and

adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  To adequately

represent a class, a named plaintiff must show that he possesses the integrity and

personal characteristics necessary to act in a fiduciary role representing the interests

of the class, and has no interests antagonistic to the interests of the class.  *See*

*Kirkpatrick v. J.C.D. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

Citco Defendants make the same argument against adequacy as they did

against commonality and typicality:  that due to Bruhl's status as a net redeemer in

---

[3]  The Court has considered the assertion that Bruhl has "unclean hands" because he offered suggestions on how to word certain sections of the PPMs.  The Court finds this argument unpersuasive.  The fact that Bruhl may have had input into the preparation of the PPMs does not, in and of itself, suggest he was a party to the alleged fraud.  The Citco Defendants have not presented any evidence to support such a conclusion.

Lancer Offshore, he is inadequate to represent those members of the class who did not redeem any portion of their investments in Lancer Offshore; and that a fundamental conflict exists in their unique defenses against Rotman for lack of standing and unclean hands.  Citco Defendants also argue that Plaintiffs' lack of diligence in seeking class certification militates against a finding that the Plaintiffs will adequately represent the class and vigorously prosecute the class claims.  The Court does not find these assertions sufficient to render Bruhl or Rotman inadequate class representatives.  In addition, it appears that Bruhl and Rotman and their chosen counsel will vigorously represent the class.

### 4.     Rule 23(b)(3)

The Plaintiffs purport to bring this action under Rule 23(b)(3),[4] which requires (i) that questions of law or fact common to class members predominate over any questions affecting individual members, and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  If "the legal or factual questions that qualify each class member's case will require individualized proof to establish each class member's claim, then the requirements of Rule 23(b) are not met."  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (affirming denial of certification where causation and damages constituted "disparate questions undermining class cohesion").

---

[4]  *See* TAC ¶ 79.

The "predominance" and "superiority" requirements are critical to certifying a class action under Rule 23(b)(3).  Indeed, these requirements are "far more demanding" than the "commonality" prerequisite of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 624.  The Plaintiffs have reduced their putative class claims to the federal securities claims under 10(b) and 20(a), and the state law breach of fiduciary duty claims.  In order to determine whether common questions predominate, "a court is called upon to examine the causes of action asserted in the complaint upon the putative class." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

The Element of Reliance

Fraud actions traditionally require, among other elements, proof that a false statement was made, that it was material, that the plaintiff relied on it, and that the false statement was the cause of the plaintiff's damages.  Thus, it is well-settled that fraud actions typically require proof of an individual's reliance on the falsity.  *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 128 S.Ct. 761, 769 (2008) ("[reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the section 10(b) private cause of action").  Indeed, each plaintiff's reliance on the defendant's deceptive acts is essential to a fraud claim because it ensures that, for liability to arise, the "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury" exists as a predicate for

liability.  *See Stoneridge,* 128 S.Ct. at 769; *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988).

<u>Issues of Reliance</u>

In *Basic*, the Supreme Court recognized in the context of a federal securities fraud class action that "[requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Basic,* 485 U.S. at 242.  Following *Basic,* some courts have refused to certify securities fraud class actions when proof of individual reliance is required. *See, e.g., In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 5-6 (1st Cir. 2005); *Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42-43 (2d Cir. 2006); *Luskin v. Intervoice-Brite Inc.*, 261 Fed. Appx. 697, 69 Fed. R. Serv. 3d 1238 (5th Cir. 2008).[5]

---

[5]  *See also Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 (5th Cir. 1996); *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 225 (2d Cir. 2008) ("in this case, reliance is too individualized to admit of common proof"); *Gariety v. Grant Thorton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004) ("Because proof of reliance is generally individualized to each plaintiff allegedly defrauded, fraud and negligent misrepresentation claims are not readily susceptible to class action treatment, precluding certification of such actions as a class action"); *Nagel v. ADM Investor Servs., Inc.,* 217 F.3d 436, 443 (7th Cir. 2000) ("Because the complaints alleged fraud, which is plaintiff-specific, issues common to all the class members were not likely to predominate over issues peculiar to specific members, which is still another requirement of Rule 23 for class certification"); *In re St. Jude Medical, Inc.,* 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment"); *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1344 (11th Cir. 2006) ("In a variety of contexts, we have held that the reliance element of a class

Accepted Bases for Presuming Reliance

In federal securities fraud actions, the Supreme Court has recognized a rebuttable presumption of reliance on the part of the individual purchasers in two different circumstances:  (1) pursuant to the fraud-on-the-market doctrine; or (2) if this case involves primarily omissions of material fact by one with a duty to disclose. *See Stoneridge*, 128 S.Ct. at 769.  At the hearing on the instant motion to certify, Plaintiffs clarified that they are not seeking a presumption of reliance based on the fraud-on-the-market theory.  Instead, Plaintiffs argue they are entitled to a presumption of reliance under the rule of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-154 (1972) ("*Affiliated Ute*") because this case concerns primarily acts of omission.  Plaintiffs also argue that another exception recognized by the Eleventh Circuit Court of Appeals applies, namely, that Defendants engaged in a common course of fraudulent conduct by participating in the Lancer scheme and thus, issues of individual reliance would not predominate over common questions of facts.

*Affiliated Ute* Presumption

If there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance.  *See Affiliated Ute*, 406 U.S. at 153-154.  The underlying policy rationale for the *Affiliated*

_____

claim presents problems of individualized proof that preclude class certification").

*Ute* presumption is that where a plaintiff is entitled to rely on the disclosures of someone who owes him a duty, requiring him to prove "how he would have acted if omitted material information had been disclosed" is unfair. *See Basic*, 485 U.S. at 245; *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 385 (5th Cir. 2007), *cert. denied,* 128 S. Ct. 1120 (2008).

Most federal courts have limited the *Affiliated Ute* presumption to cases that involve "primarily omissions."  Such an analysis requires the Court to characterize the action as either primarily a non-disclosure case (which would make the presumption applicable) or an affirmative misrepresentation case (which would make the presumption inapplicable).  *See, e.g., Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984)*; Regents of the Univ. of Cal.*, 482 F.3d at 383-84; *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 192-94 (3d Cir. 2001); *Joseph v. Wiles,* 223 F.3d 1155, 1162-63 (10th Cir. 2000); *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999).  This analysis is easier to describe than to carry out because every misstatement both advances false information and omits truthful information.  *See Joseph,* 223 F.3d at 1162-63.

In the *Affiliated Ute* decision, the United States Supreme Court placed limitations on the application of the presumption to cases involving primarily a failure to disclose.  The Supreme Court stated:

> Under the circumstances of this case, involving primarily a
> failure to disclose, positive proof of reliance is not a
> prerequisite to recovery.  All that is necessary is that the

> facts withheld be material in the sense that a reasonable
> investor might have considered them important in the
> making of this decision.... This obligation to disclose and
> this withholding of a material fact establish the requisite
> elements of causation in fact.

*Affiliated Ute*, 406 U.S. at 152-54 (citations omitted); *see also, Cavalier Carpets*,[6] 746

F.2d at 755; *Chiarella v. United States*, 445 U.S. 222, 230 (1980).

Here, a fair reading of the TAC shows that it predominantly concerns

affirmative misrepresentations.  Plaintiffs repeat throughout the TAC the same basic

allegation: the Citco Defendants made express misrepresentations regarding the

allegedly inflated and fraudulent NAVs of the Funds, upon which Plaintiffs relied.  For

example:

> ☐　　In the section of the TAC entitled "The Fraudulent Scheme," the
> Plaintiffs allege that the purported scheme consisted of two parts:  (i)
> Lauer manipulated the prices of some of the securities held in the
> Funds' portfolios; and (ii) CFS-Curacao and the Citco Directors
> "*disseminated* false monthly and annual NAV statements to Plaintiffs
> and class members, who then relied upon these false statements to
> make their investment decisions."  TAC ¶¶ 9, 91 (emphasis supplied).

> ☐　　The term "Citco Misrepresentations" is collectively defined to include
> "the unaudited financial reports [and] all NAV and financial statements
> for [the Funds]," which contained "false and fraudulent NAV figures."
> TAC ¶¶ 266, 267(b).

---

[6] In *Cavalier Carpets*, the Eleventh Circuit reaffirmed that the *Affiliated Ute* presumption is limited, "applying it only in primarily omission cases in which a duty to disclose existed."  *Id*.  The Eleventh Circuit did not apply the *Affiliated Ute* rebuttable presumption in *Cavalier Carpets* because it involved a securities fraud case based on both misrepresentations and omissions. *Id*. at 757.

☐    Plaintiffs allege that common questions of law and fact include whether "Defendants acted knowingly or recklessly in *making materially false and misleading statements* and/or in failing to correct such statements" and "whether the reported NAV of the Funds . . . were artificially inflated."  TAC ¶ 81 (emphasis supplied).

☐    The Section 10(b) count against CFS-Curacao alleges that CFS-Curacao "*disseminated materially false and misleading NAV statements* and performance information to Plaintiffs . . . [t]he Plaintiffs relied upon these misrepresentations."  TAC ¶¶ 391, 395 (emphasis supplied).  The Section 10(b) count against the Citco Directors consists of similar allegations.  TAC ¶¶ 460-463.

In an attempt to recharacterize the allegations of the TAC, Plaintiffs now argue that "[b]ecause this is a case involving primarily omissions, Plaintiffs and the other members of the proposed Class are entitled to a presumption of reliance."  DE 568 at 14.  In support of this premise, Plaintiffs point to Complaint where they allege that:

☐    the Citco Defendants "endorsed those [NAV] valuations to Plaintiffs as independently verified, and . . . *omitted* to inform Plaintiffs that no such independent verification had been completed."  TAC ¶ 9 (emphasis supplied);

☐    the Director Defendants, particularly the Citco Directors, "*omitted* to inform investors that no such independent valuation had taken place;" TAC ¶ 13 (emphasis supplied);

☐    the Citco Defendants "*failed to state* to Plaintiffs that they had not fulfilled this duty despite their obligation to speak, based either on their own prior implicit or explicit statements, or their fiduciary and contractual obligations,  or both.  By turning a blind eye to both the warning signs that the NAVs were inflated and their obligation to either correct them or advise investors that they had not done so, Citco N.V., the Citco Group (and, indirectly, their officers, the Citco Directors), earned greater administrative fees, which as noted previously were calculated based on the current NAVs of the Funds."  TAC ¶ 266

(emphasis supplied).

Plaintiffs point to other alleged omissions, namely, that the Citco Defendants

> *omitted* to tell class members that they believed that the valuations placed on individual fund holdings making up the NAVs were 'absurd'[7] and that the holdings were 'overvalued' by hundreds of millions of dollars.[8]  The Citco Defendants did not tell class members that Lauer was engaged in 'fraud,'[9] that there were 'serious indications that Lancer is/was manipulating the prices' for some of its largest holdings, that this 'might be seen as a criminal action,'[10] and that Lauer was marking the close.[11]  Nor did the Citco Defendants disclose that there were questions about their own valuation methodology from the earliest days of the Funds.[12]

DE 593 2-3.

Plaintiffs are attempting to recharacterize the representations regarding the

NAVs as omissions, by asserting that the Citco Defendants "omitted to inform"

Plaintiffs that the NAVs were fraudulent.  DE 568 at 10-11, 18.  But this type of verbal

refashioning cannot transform this case into one based "primarily on omissions."

*Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 n.3 (11th Cir. 1999); *Young v. Nationwide*

*Life Ins. Co.*, 183 F.R.D. 502, 510 (S.D. Tex. 1998) (rejecting the plaintiffs' attempt to

---

[7] *See* DE 568, Ex. H.

[8] *Id.*, Ex. A at 2.

[9] *Id.*, Ex. I.

[10] *Id.*, Ex A at 3.

[11] *Id.* at 10.

[12] *Id.*, Ex. B at 2.

recharacterize the alleged misrepresentations as omissions, observing that "such a circular argument would result in every case of misrepresentation becoming a case of omission as a result of the defendant's failure to correct a misrepresentation").

Upon reviewing the Complaint, depositions and other attachments, the Court finds that the securities claims in this case, at best, are based on "mixed" allegations of misrepresentations and omissions, and this case is not primarily based on omissions.  Here, as in *Cavalier Carpets,* the complaint indicates that "[t]he defendants did not stand mute in the face of a duty to disclose as did the defendants in *Affiliated Ute.*"  *Cavalier Carpet*, 746 F.2d at 749 n.22.  Rather, it is alleged that Defendants "undertook ... to disclose relevant information ... now alleged to contain certain misstatements of fact and to fail to contain other facts necessary to make the statements made, in light of the circumstances, not misleading." *Id.*  Consequently, *Affiliated Ute 's* presumption of reliance does not apply.

<u>Uniform Misrepresentation Theory as a Basis for Presuming Reliance</u>

Plaintiffs also argue that "the common course of the Citco Defendants' conduct toward all investors - that is, the single, common fraudulent scheme alleged" is enough to establish a classwide presumption of reliance.  DE 593 at n.13.  In support of this claim, Plaintiffs cite a number of cases that have found that individual reliance questions do not predominate where there is a "uniform misrepresentation"[13]

---

[13]  The roots of the uniform misrepresentations theory are found in large part in two-sentences of the 1966 Advisory Committee's Note to Rule 23:

or common course of fraud.  *See Kirkpatrick v. J.C.D. Bradford & Co.,* 827 F.2d 718,

724-25 (11th Cir. 1987); *Kennedy v. Tallant,* 710 F.2d 711, 717-19 (11th Cir. 1983);

*Walco v. Thenen*, 168 F.R.D. 315,333 (S.D. Fla. 1996); and *Klay v. Humana*, 382 F.3d

1241, 1246- 49 (11th Cir. 2004).

In *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983), the court found no

material variation between the Plaintiffs' claims, and determined that the single

written prospectus which was given to each Plaintiff constituted a single conspiracy

and fraudulent scheme against a large number of individuals.  In upholding the

district court's certification of a class under the Securities Exchange Act of 1934, the

Eleventh Circuit Court of Appeals found that factual distinctions, such as variations in

investment experience and each Plaintiff's degree of reliance, were not sufficient

factual distinctions to preclude certification.  *Kennedy*, 710 F.2d at 717.  In coming to

this conclusion, the Court expressed the practical consideration that "this suit

involving a single conspiracy and fraudulent scheme against a large number of

---

[A] fraud perpetrated on numerous persons by the use of similar
misrepresentations may be an appealing situation for a class action, and
it may remain so despite the need, if liability is found, for separate
determination of the damages suffered by individuals within the class.
On the other hand, although having some common core, a fraud case
may be unsuited for treatment as a class action if there was material
variation in the representations made or in the kinds or degrees of
reliance by the persons to whom they were addressed.

See Fed.R.Civ.P. 23, Advisory Committee Notes to 1966 Amendments, Subdivision
(b)(3).  Noel Hensley & David Dodds, *Precarious Presumption: Class Reliance in
Uniform Misrepresentation Cases*, 29 No. 4 Class Action Reports 3 (August 2008).

individuals is particularly appropriate for class action." *Kennedy*, 710 F.2d at 718.  In

finding the predominance requirement satisfied, the court placed primary

consideration on the fact that the claims involved allegations that the defendants

committed the same unlawful acts in the same method against the entire class.

*Kennedy v. Tallant*, 710 F.2d at 717.

   In *Kirkpatrick v. J.C.D. Bradford & Co.*, 827 F.2d 718, 724 (11th Cir. 1987), the

Eleventh Circuit found class certification to be appropriate where the complaint

alleged that a defendant brokerage firm and individual officers engaged in a common

course of conduct to misrepresent the financial condition of certain gas investment

funds.  The court compared the oral misrepresentations made by the individual

brokers to each of the named plaintiffs and concluded that since neither the

complaint nor the deposition testimony varied materially, the case was suitable for

class certification.  Specifically, the court stated:

> [T]he possibility that the named plaintiffs or other
> potential class members may have obtained the allegedly
> misleading information via their individual brokers rather
> than through widely distributed written information cannot
> transform the allegations of the complaints into claims
> concerning primary questions of individual reliance. . . .
> Here, as in *Kennedy v. Tallant*, each of the complaints
> alleges a single conspiracy and fraudulent scheme against a
> large number of individuals and thus is particularly
> appropriate for class action.[14]

_____

[14]  This decision, however, was also premised in part on the fraud-on-the-
market doctrine for presuming reliance.

*Kirkpatrick*, 827 F.2d at 724-25 (internal quotations and citations omitted).

In *Klay v. Humana Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit affirmed class certification for RICO claims where physicians sued major health maintenance organizations (HMOs) for committing mail and wire fraud by misrepresenting and concealing how much and when they would pay plaintiffs for medically necessary services and procedures. *Id*. at 1252. It was important that plaintiffs alleged that the HMOs all conveyed the same message to doctors. *Id*. at 1258. In finding that individual reliance could be established by common proof, the Eleventh Circuit held that a jury could infer that guarantees concerning physician pay – the very consideration upon which the agreements at issue were based – went to the heart of these agreements, and that doctors based their assent upon them. *Id*. at 1259. "[I]t does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due." *Id*. Correct payment was the consideration for the HMO contracts. *Id*. The court contrasted the situation in *Klay* with two cases where groups of individuals sought to sue the same defendants for discrimination arising out of different incidents. *Id*. at 1256-57. In *Klay,* the same facts were "essential elements of each plaintiff's RICO claims." *Id*. at 1257.

Following this precedent, a member of this court certified a class "even without the presumption of reliance, based on the single, common fraudulent scheme alleged." *Medine v. Washington Mutual, FA*, 185 F.R.D. 366, 371 (S.D. Fla. 1998).

Additionally, in *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996),

investors alleged that defendants violated RICO by operating a Ponzi scheme that

involved transmitting false invoices and purchase orders to entities that would make

false confirmations. *Id*. at 321-22, 335. The oral misrepresentations to the class

members were not word-for-word, but they were substantially identical in that they

all confirmed that the fictitious invoices represented actual sales or product

purchases, and so they all misrepresented or omitted the same information. *Id*. at

336. When considering whether common or individual questions regarding reliance

predominated the RICO and common law fraud claims, another member of this court

concluded that plaintiffs' common allegations that defendants knowingly made false

confirmations of nonexistent transactions predominated over individual questions

about oral representations made to plaintiffs and that a "common scheme" or

"common course of conduct" was available to support the motion for class

certification. *Id*. at 336-37.

A prominent factor in determining if reliance can be presumed from the

circumstances in each case is whether all the plaintiffs received the same or

substantially the same message from the defendants. *See also, e.g., Moore v.

PaineWebber, Inc.*, 306 F.3d 1247, 1255-56 (2d Cir. 2002) (denial of motion for class

certification because the evidence of a "common scheme" did not, standing alone,

demonstrate that the individual misrepresentations made were uniform); *In re

LifeUSA Holding Inc.*, 242 F.3d 136, 146 (3d Cir. 2001) (clarified that its prior decision

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283

(3d Cir. 1998)) rested upon the district court's finding of uniform sales presentations

to the plaintiff class); *Johnston v. HBO Film Management*, 265 F.3d 178, 194 (3d Cir.

2001) (given no evidence of uniformity in sales presentations, it was questionable

whether, or to what extent, the alleged misrepresentations facilitated or influenced

the investments at issue); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir.

2006) (Ninth Circuit "has followed an approach that favors class treatment of fraud

claims stemming from a 'common course of conduct,' *i.e.*, where a standardized

sales pitch is employed"); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 338 (N.D. Ill.

1997) ("[w]hen the fraud was perpetrated in a uniform manner against every member

of the class, such as when all plaintiffs received virtually identical written materials

from the defendants, courts typically hold that individual reliance questions do not

predominate").

      The foregoing cases suggest that in order to obtain class certification under the

"common fraudulent scheme" theory, it must be demonstrated that the same or

substantially the same misrepresentations were made to the putative class and that

they were of such a nature that it can be presumed that all members of the class

relied upon them either to invest in the first instance, to remain in the investment,

or to redeem their interest in the investment.  The Court concludes that the facts of

this case meet this standard.  The Court finds that the allegations of the Complaint

support the conclusion that the misrepresentations relating to the NAV statements

were made to the entire class.  The Court further concludes that the information in the NAV statements was of such a nature that the putative class members would have relied on it, in conjunction with other information available to them and in conjunction with their respective investment strategies.  Thus, the members of the class would have considered it material in deciding either to invest in the Funds, to remain invested in the Funds or to redeem their investment in the Funds.  Hence, individual issues relating to reliance would not predominate.

The testimony of the Citco Defendants' expert witness, Dr. Rene M. Stulz, does not alter this Court's conclusions.[15]  Dr. Stulz testified that the NAV of a hedge fund is very different than the share price of a security traded on the open market, that an NAV is "really an estimate of what the value might be under some conditions," and that a reasonable investor would not have viewed the NAV as reflecting the liquidation value of the shares in the Funds.  Transcript of Oral Argument at 42 [DE 599].  While this may be true, fraudulently inflated NAV statements would affect a reasonable investor's decision either to remain invested in the Funds or to redeem one's investment.

Dr. Stulz also testified that many hedge fund investors relied on private information directly from Lauer, and that these representations played an important role in their investment decisions.  In addition, some investors may have reviewed

---

[15]  Rene M. Stulz's report is subject to the instant Motion to Strike.

and relied on the annual audited financial statements of the Funds before investing, while other investors continued to invest because they had received redemptions based on the allegedly inflated NAVs.  Dr. Stulz opined that "a sophisticated [hedge fund] investor would not make an investment decision in a fund based on the NAV alone, they would look at a number of considerations."  Transcript of Oral Argument at 44 [DE 599].

Dr. Stulz also stated that the lead plaintiffs Bruhl and Rotman invested in the Funds for different reasons.  Bruhl invested in the Funds because he had a history of investing privately with Lauer before the Offshore Fund started, but Rotman did not have the same kind of relationship with Lauer.  "And so just looking at a few investors, it's quite obvious that they had different access to the manager, that they received different information from the manager, and that that played a role in their thinking."  *Id.* at 45.

The fact that a hedge fund investor would consider factors other than the NAV statements, or the fact that some investors would have access to different data, does not eliminate the NAV statements as a relevant and material matter to be considered in the investment calculus.  While Dr. Stulz points to various factors other than the NAV statements as having an impact on the decisions of the investors, he does not opine that the NAV statements were not material, nor does he opine that investors would not rely upon the NAV statements as one of the factors in making their investment decisions.  He merely concludes that investors would not rely upon them

alone.

Dr. Stulz further testified that investments in the Funds in question are not

liquid.  Therefore, the NAV at a point in time is not something an investor could ever

receive.  However, the illiquidity of the assets of the Funds and, as a result, the

potential inability of an investor to redeem his investment consistent with the NAV, is

not the relevant inquiry.  Rather, the relevant question is whether false NAV's were

material to the investor's decision to remain invested in the Funds or to seek

redemption, recognizing that the NAV might not be a good predictor of the proceeds

that would accrue from the redemption.  The Court rejects the suggestion that the

NAV statements would not have such relevance to all members of the putative class.[16]

While various putative class members may have had individualized motivations

_____

[16]  The facts of this case differ from the facts in *Camden Asset Management, L.P. v. Sunbeam Corp.*, No 99-8275, 2001 WL 34556527, *12-13 (S.D. Fla. July 3, 2001).  In *Camden Asset Management*, the court did not certify the class because it concluded that the financial representations contained in the offering memorandum were not the basis for the purchases.  Seventy-five percent of both the class representatives and class members deposed acknowledged they employed a convertible arbitrage strategy relative to the debentures purchased, which did not depend necessarily on the company's financials.  This investment strategy involved "going long" on convertible securities, while simultaneously "going short" on underlying equities of the same issuer that were determined to be overvalued.  *Id.* at *13.  Alternatively, the debentures were purchased with the expectation that they may actually earn more from the "short" side of the transaction by short selling the same issuer's underlying equities.  *Id.*  There is no evidence of such an investment strategy being employed in this case, which might render false financial representations relative to the Funds immaterial.  In fact, Dr. Stulz testified that investors in the Funds "can't go short in the NAVs."  Transcript of Oral Argument at 42 [DE 599].

and investment strategies which figured into their decision either to invest, remain

invested or redeem their interests in the Funds, the Court concludes that the alleged

fraudulent NAV statements were a material consideration which affected their

investment decisions.  Thus, common questions will predominate over individual

questions in this case.  Additionally, it should be noted that even though the

Defendants have not addressed the issue of predominance of common issues with

respect to the Plaintiff's remaining claims, the totality of the record leads the

undersigned to conclude that the proposed class satisfies the first requirement of

Rule 23(b)(3).

<u>Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Claims</u>[17]

Other than make the same reliance argument which has been rejected above,

Citco Defendants assert that class treatment is not appropriate for the breach of

fiduciary duty claims because an investor-by-investor analysis is required to

determine whether a "special factual relationship" exists between each Citco

Director and the specific investor.  Citco Defendants base this argument on their

interpretation of British Virgin Island ("BVI") law which they assert controls the

determination of the nature and scope of the duties of the Citco Directors.  According

to Citco Defendants, under English law, which the BVI follows, directors owe a

---

[17] Previously, this Court denied the Citco Directors' Motion to Dismiss and found that Plaintiffs had adequately pled the element of substantial assistance with regard to the claims against the Director Defendants for aiding and abetting fraud and aiding and abetting Lauer's breach of fiduciary duty.  *See* DE 509.

fiduciary duty only to the corporation, and not to the shareholders individually.[18]  *See* DE 577 at 18-19.

Plaintiffs respond by referring to common law, where "the directors of a private corporation are considered by equity to be in a fiduciary relationship with the corporation and its shareholders."  *Fox v. Professional Wrecker Operators of Florida, Inc.*, 801 So. 2d 175, 180 (Fla. Dist. Ct. App. 2001).  Plaintiffs also argue that even if BVI law applies, the fiduciary duty owed each plaintiff is the same to all members of the potential class and whether the individual defendants assumed specific responsibility toward shareholders as a group is a merits issue that can be resolved on a class wide basis.  The Court agrees.  Each of the claims arise from the same alleged scheme or course of conduct, and the Citco Directors uniformly represented their duties to Plaintiffs through the offering materials.  Moreover, the Individual Defendants are corporate insiders, who have by virtue of their position as Citco Directors, a duty to disclose material facts which are known to them but which are not known to persons with whom they deal and which, if known, would affect their investment judgment.  *See* Order, DE 509 at 5 (citing *Chiarella v. U.S.*, 445 U.S. 222, 227 (1980)).  The Court finds that determining whether the Citco Directors breached their fiduciary duty, thereby causing losses to the Funds, does not require each member of the class to establish individualized loss causation.  The loss causation

_____

[18]  Whether Florida or BVI law controls the common law claims in this and other ancillary cases has yet to be fully briefed and decided.

burden can be satisfied simply by proving that there was a fiduciary breach, and that

but for the breach, the Funds' assets would have been greater.  *In re Enron Corp.*,

2006 WL 1662596, at *14 (S.D. Tex., June 7, 2006).  Accordingly, the claim for breach

of fiduciary duty is amenable to class treatment.

    The same is true for the claim for aiding and abetting a breach of fiduciary

duty.  This claim requires: (1) a fiduciary duty on the part of the primary wrongdoer;

(2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider

and abettor; and (4) the aider and abettor's substantial assistance or encouragement

of the wrongdoing.  *See In re Caribbean K Line, Ltd*, 288 B.R. 908, 919 (S.D. Fla.

2002); *see also AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

Class certification of the claims for aiding and abetting a breach of a fiduciary duty is

appropriate because none of the claim's elements requires reliance or any other

factor unique to each class member.

Superiority[19]

    In many respects, the predominance analysis has a tremendous impact on the

superiority analysis for the simple reason that, the more common issues predominate

---

    [19]  A channeling injunction is in place for all claims related to the instant
action, so that all litigants must file their case in the Southern District of Florida.
This case presents an unusual situation in that from early on, putative class members
were given a choice to proceed as part of a "Group Action," which would not seek to
be certified as a class.  Many investors chose to join the group, which case was
transferred to and is now proceeding in the Southern District of New York.  The Group
Action is asserting substantially similar claims to those at issue here.

over individual issues, the more desirable a class action lawsuit will be as a vehicle

for adjudicating the plaintiffs' claims.  *Klay*, 382 F.3d at 1269.  Rule 23(b)(3) includes

a non-exhaustive list of four factors courts should take into account in making this

determination:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

Because the putative class members' claims are predicated on a common set of

facts and concern the same scheme, it will be unnecessary to hear testimony from

every individual class member.  Because this controversy involves many common

questions of law and fact, a class action will be superior to other available methods

for fairly and efficiently adjudicating this controversy.  Accordingly, this Court is

convinced, based on the evidence before it, that Plaintiffs have met their burden to

show that the requirements of Rule 23(b)(3) have been met.

<u>CONCLUSION</u>

In accordance with the findings above, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      The Citco Defendants' Motion to Deny Class Certification [DE 468] is

         DENIED;

2.      The Citco Defendants' Request for Hearing on Their Motion to Deny Class

        Certification [DE 473] is DENIED AS MOOT;

3.      Plaintiffs' Motion For Certification of the Litigation Class [DE 568] is

        GRANTED;

4.      Plaintiffs' Motion to Strike Report of Rene M. Stulz [DE 592] is DENIED.

        **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th day of September, 2008.


_____
KENNETH A. MARRA
United States District Judge


copies to:

All counsel of record